## WIREBOUNDS PATENTS CO. et al. v. SARANAC AUTOMATIC MACHINE CORPORATION.

### No. 6226.

Circuit Court of Appeals, Sixth Circuit.

July 3, 1933.

E. F. Dunne, Jr., of New York City (Janney, Blair & Curtis, of New York City, on the brief), for appellants.

H. M. Cox, of Chicago, Ill. (Cox & Moore, of Chicago, Ill., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

This is the second suit brought by appellant against the appellee for infringement of the Inwood and Lavenberg method patent 1,128,252 issued February 9, 1915. The first case involved three patents: A machine patent, a workholder patent, and the patent in suit. The trial court held in that case that there was no infringement of the machine and workholder patents, and that the method patent was void for laches because of inexcusable delay in filing the divisional application upon which it was issued. (D. C.) 24 F.(2d) 872. This court reversed the decree of the trial court and held that claim 25 of the machine patent was valid and infringed. 37 F.(2d) 830. The court found no occasion to pass upon the validity of the method patent or the validity and infringement of

the workholder patent. The Supreme Court reversed the decision of this court and held the machine patent invalid. 282 U. S. 704, 51 S. Ct. 232, 75 L. Ed. 634. In doing so it stated that the conception of all the patents was that of a reissue product patent No. 12,725 held valid in Wirebounds Patents Co. v. Chicago Mill & Lumber Co. (D. C.) 238 F. 929, that this patent completely disclosed the advance which Inwood and Lavenberg had made over the prior art, and that it had "taught all that was disclosed by their method patent," for the method claimed was "but the process of the now expired reissue patent resulting in the product of the patent." As, however, the appeal was from the decision on the machine patent, the court did not expressly pass upon the method patent. It did pass upon the workholder patent, saying that the question was "not one of reliance upon the prior art of the reissue patent as against a co-pending patent [application], or of double patenting, or of the overlapping of specific and generic patents. It is the attempted extension of the monopoly of the expired reissue patent in Inwood and Lavenberg's invention by resort to the machine patent, and to the workholder from which the described invention had been subtracted by division, and which cover, not the invention of the reissue patent, but a mechanical device which does not involve invention." This court, taking the view that the Supreme Court had disposed of the machine and workholder patents, limited its mandate to the method patent, as to which it directed that the bill be "dismissed without prejudice." 49 F. (2d) 261, 262.

After the dismissal of the bill without prejudice in that case, this suit was brought by the appellant against the appellee upon the same patent for the same infringement alleged in the former suit, and on motion of appellee was dismissed on the ground that the matters therein sought to be litigated were determined on the appeal in the former case, but if not, the appellant was estopped from maintaining the action by its failure to request this court, after the rendition of its opinion and before the decision of the Supreme Court in that case, to pass upon the validity of the patent, and further, that the refusal of this court to give further consideration to the patent after the rendition of the Supreme Court opinion, if not an adjudication of the patent, was a dismissal of the appellant's claim thereunder as moot.

The Supreme Court did not in terms hold that the method patent was invalid. It did state that the reissue patent taught all that was disclosed by the method patent (page 710 of 282 U. S., 51 S. Ct. 232), and that by resort to these later patents the appellant had attempted to extend the monopoly of the expired reissue. Obviously the method patent might have been included in the latter statement just as rationally as the workholder patent. In dealing with the questions here presented, we need not, however, resort to inferences to be drawn from the Supreme Court opinion, for the history of the patent is set forth in the record of the first case and is so written in the various opinions to which we have referred that there can be no mistake as to the circumstances in which it was obtained. Considering this history, we cannot doubt that whatever may be the conventional meaning of "dismissed without prejudice," there was ample justification for this court's refusal further to consider the patent in view of the evidence as to the delay in filing the application on which it was issued.

■ The patent in suit issued on a division of the workholder patent application, which was filed October 14, 1904. No method claims were filed at that time nor indeed on this application at all until 1912. It is true that such claims were filed on the machine application in November, 1904, but these were canceled in January, 1905, and from that date until March, 1912, the patentees made no method claims in any of their pending applications. It is no excuse for this delay that there were interferences in the Patent Office with the two machine patents, for, as thought by the trial judge in the first case and as we are convinced from the Patent Office records, those interferences had nothing to do with a method or process.

In view of the circumstances above mentioned, the cases of Webster Electric Co. v. Splitdorf Electric Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792, and Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, while dealing with one phase of laches and delay, are not precisely in point, for in them the making of amendments, the copying of claims for interference purposes, or the filing of divisional applications, was necessitated by the issue of a patent to another inventor, which patent wholly or partially covered the same ground as the pending application, and the sole purpose of the then applicant was to obtain a patent in terms broad enough to cover that already issued. These two cases held that, in analogy to the existing limitation upon a right to re-

issue, unexplained delay and neglect upon the part of an applicant, for more than two years, in bringing forward claims broader than those originally sought, that is, a delay of more than two years after the issue of the other patent, constituted laches by which the applicant lost whatever rights he might otherwise have had. Both cases had reference to interfering patents in respect of the same subject-matter. This we do not find in the present case, but the two cited cases are interesting as showing one set of circumstances in which rights which might otherwise have existed may be forfeited by laches.

■ Another phase of the same general subject is illustrated by the cases of Woodbridge v. United States, 263 U. S. 50, 44 S. Ct. 45, 68 L. Ed. 159, and the Supreme Court decision in the case now at bar. Compare also Macbeth-Evans Glass Co. v. General Electric Co., 246 F. 695 (6 C. C. A.). The rationale of these three cases is that if the inventor, intentionally or by reason of culpable neglect, be guilty of action which unduly postpones the time when the public would be entitled to the free use of the invention, and thus defeats the policy of the patent law, the right to a patent will be lost. Perhaps mere delay arising from taking advantage of the time allowed to make response to patent office action, without more, is not enough to defeat the applicant's right (Overland Motor Co. v. Packard Motor Car Co., 274 U. S. 417, 47 S. Ct. 672, 71 L. Ed. 1131), but deliberate delay of more than seven years in the present case would seem to align it more closely with Woodbridge v. United States than with Overland Motor Co. v. Packard Motor Car Co.

■ There is a further principle, perhaps announced by the Supreme Court for the first time in its decision of this case in 282 U. S. 704, 51 S. Ct. 232, 75 L. Ed. 634, or at least clearly deducible from that opinion, which in our opinion must control the present case, and that is that although an inventive concept may be susceptible to embodiment in more than one type of invention (machine, product, or method), when the inventor accepts a patent for one embodiment of this concept which in effect gives him a monopoly of the others, he thereby loses his right to a subsequent patent upon any other embodiments, because to grant him such right would be to extend the monopoly given by law. Probably in such case the inventive concept must be basically unitary, and the patent which is granted must disclose and teach all that is found in the subsequent patents. Possibly, also, the practice of the earlier issued patent must involve the use of the machine, device, or method of the later patents; or the machine, device, or method of the later patents must evidence no more than the use of mechanical ability in the more efficient practice of the earlier patent. But even when measured by these severe standards the later patents in the present case cannot stand. As we have already said, and as stated by the Supreme Court, the reissue patent taught all that was disclosed by the method patent in suit. The reissue could not be advantageously utilized in conformity with its teachings without also practicing the method; and the method was but the more or less obvious mechanical means for producing the ultimate product involved in the reissue. Compare Mosler Safe & Lock Co. v. Mosler, Bahmann & Co., 127 U. S. 354, 361, 8 S. Ct. 1148, 32 L. Ed. 182.

■ Finally, it may be said that the statute requires the patentee to make known to the public the limits of the monopoly which he claims (Rev. St. § 4888, 35 USCA § 33), and where the invention is unitary in its nature the right to a patent is exhausted except as claimed in the first patent to issue. Thereafter deficiencies in the scope of the claims must be supplied by reissue. Such reissue patent would expire as of the date of expiration of the original patent upon which it is founded, and we do not think that an inventor should be permitted indirectly to obtain more in the way of an extended term of monopoly, as by keeping alive for years some fragment of his application and by division, than he could directly obtain by reissue. Compare General Motors Corp. v. Rubsam Corp., 65 F.(2d) 217 (6 C. C. A.), decided May 19, 1933.

For the reasons above set forth the decree of the District Court is affirmed.