## AMERICAN WOOD PRODUCTS CORPO-
## RATION v. CRANE CO.
### No. 5375.

District Court, N. D. Ohio, E. D.
June 29, 1937.

John F. Oberlin (of Oberlin, Limbach & Day), O. G. Messenger, and Alonzo M. Snyder, all of Cleveland, Ohio, for plaintiff.

Clarence E. Mehlhope, of Chicago, Ill., and Hull, Brock & West, of Cleveland, Ohio, for defendant.

WEST, District Judge.

Suit for infringement of U. S. Patent 1,956,768, May 1, 1934, on application filed June 8, 1931, to John P. Kubes, assignor to plaintiff. The specification recites, p. 1, lines 1-6: "This invention relates to shipping crates in which heavy breakable articles are to be shipped and, more particularly, the invention relates to crates having a V-shape which are to be used where the object to be crated is more securely retained by a crate of this shape." The crates are used for shipping wash-downs or sanitary toilet bowls and are wire-bound. This feature is admittedly old. The patentee states, p. 1, lines 98-103: "I have now discovered that a crate may be completely put together without using nails to hold the cross-pieces, provided the cross-pieces are cut with projections on their ends which fit into corresponding depressions in oppositely disposed cleats." One such cross-piece is provided for each end of the crate, and is disposed between the top and bottom cleats of the end frame.

The uncontradicted evidence shows that the patented construction became immediately successful and since the date of the patent more than 2,250,000 have been sold by plaintiff, a very substantial increase over the sales of its former type of crate, from which it differs by having the two cross-pieces fastened to or held between the cleats by the dowel and mortise method instead of by nails.

This simple and apparently obvious use of a well known and ancient form of detachable connection has proven of great utility. Plaintiff's formerly nailed cross-pieces needed to be heavier, whether the nails were driven through the cleats and into the ends of the cross-pieces from top and bottom or, as in another old form, driven through the sides of the cross-pieces near their ends, into the outer sides of the top and bottom end-frame cleats. The use of nails caused occasional damage to the bowl within the crate and required more time in packing than is necessary when the new braces with their pins fitting into the mortises of the cleats are used. The patented construction provides a detachable connection between the parts so that in unpacking, no nails are required to be drawn, but the braces are released when the wires are cut, and the top of the crate is lifted and folded back.

The defendant's crate is practically a copy of plaintiff's patented crate, and infringement is admitted if the patent is valid. Defendant claims it to be invalid because the plaintiff's cross-pieces show a construction very old in this and all other arts where braces are held in similar positions for

similar purposes. It should be said that these so-called braces across the end not only serve to strengthen the construction, but to hold the bowl, which would otherwise slide from the crate. No single patent shows a similarly constructed cross-piece applied in the manner of the patent and for the same purpose; but several prior patents are produced in which both solid end-portions of crates, some wire-bound and some not, are maintained in position by integral dowels or pins set in opposing end cleats. Some of these fit into mortises and others into grooves, and in at least one of the patents, Bokop 698,435, the pin and mortise construction is applied to open side sections instead of solid end sections. In this, however, these side sections appear to add no strength to the crate, that feature being taken care of by the frame. Prior use is shown of a wire-bound shipping box made by the former Plymouth Box, now Plymouth Manufacturing, Company, and sold in large quantities to Rand-McNally Co. This, I understand, conforms largely to patent 1,070,591 to Fassnacht. One of these boxes is in evidence. It has three vertical battens at each end instead of two as shown by Fassnacht's patent, all carrying tenons which fit into grooves equivalent to a mortise, in the top and bottom end cleats, the former however being carried by the lid of the box. But when the box is closed and the lid fastened, such cleat functions substantially as the top cleat of the patent. The box Ex. 1, Wolfarth deposition, offered by defendant, was not sufficiently proven as to date, and is not considered. I think it must be said that the prior art, while not disclosing the precise form of plaintiff's new brace of cross-piece, clearly shows the idea of detachable connecting means, which is the underlying thought of the patent.

In Hug v. Lakewood Engineering Co., 6 Cir., 7 F.2d 98, 99, in speaking of a new combination of old elements, it is said: "Each case involving these questions presents a more or less unique problem. In one class the patentee makes a selection of old elements from several places and puts them into a novel and useful combination; this will not usually be found to be unpatentable. In the other class he finds most of the elements already in combination, and adds one or two already well known, singly or as groups, as common expedients in similar situations, or he substitutes for one or two of those elements devices already familiar to mechanics for analogous use; here must be

a very meritorious case of benefit to the art in order to justify a patent."

Kubes merely substituted for the nailed cross-piece, which had been used since 1923, another which was not quite so thick, formed with dowels or pins upon the ends, to be inserted in corresponding sockets in the cleats. This appears to be a device perfectly familiar to mechanics for analogous use. But the evidence further shows that the result in the saving of time, effort, and material has been of great value to the art and the improvement is a decided advance.

In the Hug case the court was not attempting to state all the requisites of an invention where old elements are employed; it merely agreed with the lower court that under the circumstances there present, invention was absent.

■ The patent in suit appears to meet the test of the Hug case, but in view of the obvious character of the expedient employed, I think in order to be valid it should meet the further test so often stated in the patent law, for example, in Paramount-Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 454, 79 L. Ed. 997: "Evidence of great utility of a method or device, it is true, may in some circumstances be accepted as evidence of invention. Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want."

This case and doctrine are referred to in Patent Royalties Corp. v. Land O'Lakes Creameries, 2 Cir., 89 F.2d 624, 627: "So it appears that the elements of the combination had been available for many years; that the art had always needed a good egg carrier; that a substantial number of persons had tried to make one; and that the patent had quick and almost universal acceptance. That makes the classical picture of an invention, unless there are some contradictory factors." And Judge Hand cites the Paramount-Publix case, supra, evidently as a case exhibiting such contradictory factors. And it does, for the Supreme Court said that prior to the patent there in suit, no demand had arisen for the new improvement. See also E. I. Du Pont De Nemours & Co. v. Glidden Co., 2 Cir., 67 F.2d 392, where DeForest Radio Co. v. Gen. Elec. Co., 283 U.S. 664, 51 S.Ct. 563, 75 L.Ed. 1339, was said to present another contradictory

factor, viz., lack of previous efforts to meet an old need. In the De Nemours case, 67 F.2d at page 395, Judge Hand says: "However obvious Langmuir's invention might seem to be, we have no reason to suppose that, had he been the first to succeed of several experimenters, working over a substantial period after the practical need had arisen, he would have failed." To the same point, see B. G. Corp. v. Walter Kidde & Co., 2 Cir., 79 F.2d 20, 22: "If the combination would have had practical value long before it appeared, if no impediment, technical, or commercial, stood in the way, if during that time others had been at work upon the same subject, and if the invention was at once accepted as an answer to the old need, there is usually just basis for the inference."

Defendant cites twelve cases on indicia of invention. In all of them but one, where validity and an old, simple element were involved, previous efforts to meet a well known want were cited and relied on to some extent to establish invention. See Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 324, 325, 48 S.Ct. 170, 72 L.Ed. 298; Boyer v. Keller Tool Co., 3 Cir., 127 F. 130, 138; Consolidated Safety-Valve Co. v. Crosby S. G. & V. Co., 113 U.S. 157, 179, 5 S.Ct. 513, 28 L.Ed. 939; Eibel Process Co. v. Minnesota & O. Paper Co., 261 U.S. 45, 53, 43 S.Ct. 322, 67 L.Ed. 523; Westinghouse El. & Mfg. Co. v. Allis-Chalmers Co., 3 Cir., 176 F. 362, 367; Byrne Mfg. Co. v. American Flange & Mfg. Co., 6 Cir., 87 F.2d 783, 785; Nat. Mach. Co. v. Ajax Mfg. Co.[1] (this court, unreported, many unsuccessful efforts appeared). In the gutter hanger case, Rachlin v. Watsky, 2 Cir., 30 F.2d 225, no mention is made of the doctrine, but the court cited two cases as authority, and it is mentioned in both. See Miehle Printing Press & Mfg. Co. v. Whitlock P. P. & Mfg. Co., 2 Cir., 223 F. 647, 650, and A. Kimball Co. v. Noesting Pin Ticket Co., 2 Cir., 262 F. 148, 149.

In Sanitary Refrig'r Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147, and Allen v. Wingerter, 3 Cir., 17 F.2d 745, validity was not involved, and Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112, related to a generic patent and not to improvement by adding an old element. In Radiator Specialty Co. v. Buhot, 3 Cir., 39 F.2d 373, the court dealt with obscure chemical reactions and not with elements of known and obvious characteristics, see 39 F.2d page 376.

I conclude that in the case at bar substantial proof of long-felt want and unsuccessful efforts to fill it is necessary to validate the patent, its absence constituting one of Judge Hand's "contradictory factors".

■ Assuming that the evidence of complaints from users of plaintiff's former crate, Ex. 8, and of plaintiff's experience, is sufficient to establish a recognized need for a nailless method of fastening the braces to the cleats, still the record is barren of any evidence of efforts by any one, including the plaintiff, to satisfy that need, prior to the patentee's conception. There is no testimony that others did anything to improve on Ex. 8. And all plaintiff did was to change from its original method of driving the nails into the ends of the braces, called method A, to method B, wherein the nails were driven through the sides of the braces into the sides of the cleats, and then change back to method A. These were not efforts to secure a nailless connection, but experiments in methods of nailing. Had the patentee devised a novel element to fill the need, that might easily have been invention, but when he substituted for nails a device "already familiar to mechanics for analogous use" and which was at least foreshadowed by fastening methods then found in this particular art, I think he must show more than mere merit and commercial success to secure a patent. He should at least prove a long-felt, i. e., recognized want and previous unsuccessful efforts by others to fill it. Otherwise, what he did, though following experiment and effort on his part, was the ordinary mechanical skill to be expected in the normal development of the art.

In Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 87 F.2d 26, the court recognizes the patentability of a combination of old elements producing a new and useful result or an old result in a more efficient manner, and that the mere use of antecedent elements to produce an old result is not invention, and then states, 87 F.2d page 28: "Neither does the production of a new device by the rearrangement or manipulation of known elements through application of ordinary mechanical skill constitute invention although it may have required study, effort, and experimentation. Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S.Ct. 42, 70 L.Ed. 222; Saranac

---

[1] Reversed and remanded, with instructions, 6 Cir., 93 F.2d 344.

Automatic Mach. Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Electric Cable Co. v. Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131. * * * The outstanding result which the device produced was that the change of reticules could be made quicker and easier. That was effected through a combination of old elements with changes and additions which one skilled in the calling would make in the natural development of the art. It was the product of mechanical skill, not a new result or an old result accomplished in a better and more facile way through inventive genius."

After many rejections by the Patent Office the claims were amended to their present form and allowed following an oral interview. The File Wrapper, Ex. 7, p. 5, discloses that one reason for patentability strongly urged upon the Office was that in the new crate the cross-piece or brace could be used as a convenient hand-hold and that this was a novel feature. I quote: "The crates of the prior art could not be substituted for those of the applicant because * * * third, no spaced central cross-piece is provided which can be used as a hand-hold. In shipping heavy articles which weigh in the neighborhood of 40 pounds the provision of a member which has a double function of bracing the crate and acting as a hand-hold is highly important. It is almost impossible to lift cumbersome crates of the closed type such as shown in Wilcox, Brown, and Simpson. Applicant's crate, on the contrary, can be readily lifted by grasping the cross-piece 16. * * * None of the prior art patentees used a stiff central cross-piece but instead they have used filler blocks which completely fill all of the space between the end cleats."

These representations were incorrect in that the plaintiff's own crate, Ex. 8, which it had manufactured from 1923, contained the central brace or cross-piece so spaced from the remaining sections as to afford a convenient hand-hold precisely as does the patented crate. In it no filler blocks filling up the space between the end cleats were used. It did not have solid ends, and there was nothing whatever novel in the hand-hold of the new crate. The Examiner did not have it before him, and may have given that feature the importance which the statement attaches to it. This failure to consider all the prior art seriously weakens the presumption of validity arising from issue of the patent.

The foregoing necessitates a finding that the patent in suit is invalid notwithstanding its utility and pronounced commercial success.

The bill will be dismissed at plaintiff's costs.