### BELLEVUE MFG. CO. v. WESTERN AUTO SUPPLY CO.

No. 1567.

District Court, N. D. Ohio, W. D.

Sept. 27, 1939.

Geo. E. Kirk and Wm. O. Ballard, both of Toledo, Ohio, for plaintiff.

E. B. Whitcomb and H. O. Ernsberger, both of Toledo, Ohio, for defendant.

KLOEB, District Judge.

The Bill of Complaint in this case charges the Defendant, The Western Auto Supply Company, with infringement of Martin patent No. 2,047,378, issued July 14, 1936, and relating to a motor vehicle exhaust pipe extension.

384

The answer of the Defendant, among other things, denies in paragraph 4 thereof that Martin was the original, sole and first inventor of a motor vehicle exhaust pipe extension; denies in paragraph 6 thereof that Defendant has committed any acts in anywise violating or threatening to violate any of Plaintiff's rights under said letters patent; and in paragraph 11 thereof alleges that the letters patent relied upon are mere aggregations of features and elements and combinations of features and of elements common to the prior art and known to and used by manufacturers or operators of motor vehicles generally prior to the alleged invention thereof by the Plaintiff.

In other words, the Defendant charges

(1) That the Martin patent is invalid because of the prior art.

(2) That the Martin patent is invalid as involving mere mechanical skill and is a combination of old elements producing an old result.

(3) Assuming validity, non-infringement because the Defendant's alleged infringing devices do not follow the teachings of the Martin patent, and the claim of the Martin patent does not read on the Defendant's construction.

I am persuaded that these contentions are proper and ought to be upheld, and that the Bill of Complaint of the Plaintiff ought therefore be dismissed.

In the specification of the Martin patent, lines 18 to 23, I find the following: "The invention herein relates to extensions for motor vehicle exhaust pipes whereby the discharge is carried beyond the normal extent of said pipe preventing discoloring of the motor vehicle adjacent the discharge without increasing the back pressure to the engine."

In Hess patent No. 1173801 issued February 29, 1916, in lines 9 to 13 of the specification I find the following: "My invention relates to devices for deflecting the discharge from the exhaust of an automobile engine to prevent the hot gases from injuring some portion of the automobile."

In lines 78 to 83 thereof I find the following: "The exhaust is deflected in the desired manner without in any way restricting or throttling the exhaust, or causing any appreciable back pressure in the exhaust passage extending from the engine."

In Greene patent No. 1179823 issued April 18, 1916, in lines 45 to 56, Column 1, page 3, of the specification I find the

following: "A deflector attachment 46 may be attached to the end of the exhaust pipe 47 by suitable means as a clamp connection 48, the purpose of said attachment being to direct the exhaust gases downwardly so that the tires a upon the holder rack will not lie in the path of the usual muffler exhaust. The attachment is preferably made in the form of a pipe elbow and may have a vent 49 to relieve any back pressure that might otherwise occur due to changing the course of the exhaust gases."

It seems to me that every substantial feature that appears in the specification of the Martin patent bears on the specification in the Hess patent, and that the latter shows all of the elements of structural utility to be found in the Martin disclosure.

The essential elements in the Greene patent have definite relationship to the essential elements of the Martin patent. The purpose to be achieved in each of these devices is to divert the flow of the exhaust gases so as to prevent injury and damage to some part of the automobile, and to avoid, in so doing, an increase in the back pressure on the engine.

It appears from Defendant's Exhibit A, which is the pertinent portion of the 1917 catalogue of the "Motor Equipment Company" of Chicago, and from Defendant's Exhibit B, which is the pertinent portion of Defendant's 1921 catalogue, and from Defendant's Exhibit C, which is the pertinent portion of Defendant's 1923 catalogue, that exhaust deflectors were advertised and sold in those years by the Defendant and the "Motor Equipment Company" for the purpose of deflecting exhaust gases from an automobile. It further appears that these deflectors then advertised and sold followed precisely the description and specifications of Hess, and thus in my opinion anticipated the patent in suit.

In the submission of this case the Plaintiff offered one Eros Barker as a witness, and he testified that he had had constructed a device on the order of Hess which is designated Exhibit 10, and that he had conducted certain tests with Exhibit 10 attached to the exhaust pipe of an automobile. I here quote a portion of the cross examination of this witness beginning at the last paragraph on page 12 of the record, and concluding at the beginning of the last paragraph on page 13 thereof:

"Q. Would you please examine Figure 4 of the Hess patent and especially the Terminus C at the end of this deflector and

state whether the terminus of this deflector, Exhibit 10, is in the same position with respect to the clamping portions? A. No, it is not.

"Q. Could you tell me is it lower with respect to the exhaust pipe, that is, Exhibit 10, than the showing of Figure 4 of the Hess patent: A. It is lower.

"Q. You have testified when you tested this device, Exhibit 10, there was a slight back pressure created; that is correct? A. Yes sir.

"Q. What would be your opinion as to a device the same as Figure 4 of the Hess patent; would back pressure exist with the use of a device of that nature? A. Not as that shows there.

"The Court: In other words you are of the opinion that there would be more back pressure shown upon the tube through the use of Exhibit 10 than there would be through the use of the Hess exhibit? A.

We use it in that position.

"The Court: You are of the opinion there would be more back pressure through the use of that than there would be through the use of a device such as Exhibit 4, the Hess? A. There would be.

"Q. I show you Defendant's Exhibit A and refer you to a stock number 6475 and ask you to compare the item shown on Exhibit A with the construction shown in the Hess Patent, No. 1,173,801? A. I would say it was identical."

It appears from the testimony of this witness that the Exhibit 10 differed from the Hess patent in that the end of the deflector was considerably below a plane drawn through the body of the implement, whereas in the Hess patent the tip of the device was above a plane so drawn, and in this connection was similar to the Martin patent. The witness found back pressure in Exhibit 10, but was of the opinion that there would be no back pressure with the Hess device. He was further of the opinion that the exhaust device advertised in Defendant's Exhibit A was identical with the Hess patent.

■ For the foregoing reasons I am of the opinion that the Martin patent is invalid because of the prior art; that the record exhibits various instances of invention, advertisement, and use of device so close to Martin in structure and function that they anticipate.

I am further of the opinion that Martin patent embodies a combination of old elements that produce an old result, and that any improvement or advancement over the anticipatory art involves no more than mere mechanical skill, and does not rise to the dignity of an invention. In this connection the case of Keene et al. v. New Idea Spreader Company, 6 Cir., 231 F. 701, is pertinent. In the case of Lyman Gun Sight Corporation v. Redfield Gun Sight Corporation, 10 Cir., 87 F.2d 26, at page 28, the Court says: "Neither does the production of a new device by the rearrangement or manipulation of known elements through application of ordinary mechanical skill constitute invention although it may have required study, effort, and experimentation. Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Electric Cable Co. v. Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131."

■ I am further of the opinion that, assuming validity of the Martin patent, there has been no infringement by the Defendant company. The operation of Defendant's device Exhibits 3 and 5 is substantially different from that of the Martin patent, and they do not include the limitations clearly appearing in the claim on the Martin patent. See Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199, 202.

In lines 6 to 11, column 2, in the descriptive matter of the Martin patent I find the following: "Terminus 14 of the flare portion 11 is in a plane parallel to the plane passing through the lower portion of the exhaust outlet 4 and slightly thereabove, so that there may be a straight backward flow of a portion of the gases throughout the accessory to discharge."

It thus becomes apparent that through the use of the Martin extension the gases are sought to be discharged straight backward, while in Defendant's construction the gases are sought to be discharged downwardly because they impinge upon the tip portion of the device. In other words, the end portion of the upper wall of Defendant's device terminates in a plane below the plane of the exhaust pipe opening.

The record does not disclose any substantial proof offered by the Plaintiff that the Defendant's device was an infringement upon the claims disclosed in Plaintiff's patent. Plaintiff has failed to show infringement upon the part of the Defendant.

The Bill of Complaint is dismissed at Plaintiff's costs. Exceptions saved to the

Plaintiff. Counsel for Defendant may submit findings of fact and conclusions of law in accordance with this opinion within ten days, and Plaintiff shall have ten days thereafter to file exceptions thereto.