188

**DAVIS CO. v. HEMPHILL CO.**

**Civ. No. 341.**

United States District Court
M. D. North Carolina.

Aug. 12, 1949.

Welch Jordan, Greensboro, N. C., Charles A. Noone, Chattanooga, Tenn., Robert E. Burns, New York City and James P. Burns, of Burns, Doane & Benedict, Washington, D. C., for plaintiff.

Brooks, McLendon, Brim and Holderness, Greensboro, N. C., Burgess, Ryan and Hicks, New York City, John S. Bradley, Pawtucket, R. I., for defendant.

HAYES, District Judge.

Plaintiff is the owner of Davis patent 2,306,207 and Claims 8, 12 and 13 only are at issue. Defendant sold the accused machines to Baker-Cammack Company of Burlington, N. C. in 1946. This is a companion case to Davis Co. v. Baker-Cammack Co., 86 F.Supp. 180, in which a separate opinion is filed. The evidence in those cases germane to this is a part of the record. In view of the disposition of the companion cases, it is deemed expedient to confine the comment to the questions of infringement and validity of claims in suit.

The patent in suit relates to a knitting machine especially adapted to knit an elastic thread in combination with an inelastic thread. The claims in suit are combination claims. They recite the elements of the machine in combination, and through the medium of this combination new results of great merit have been accomplished.

The knitting machine of the patent in suit is a circular knitting machine having a single set of cylinder needles and is provided with the requisite cooperating and interacting elements to render it effective in the knitting of elastic thread in combination with inelastic thread to produce automatic elastic top stockings of plain knit fabric which have the appearance and general characteristics of the well known transfer rib tops made on machines having dial and cylinder needles. The three claims in suit read as follows:

"8. In a circular knitting machine, in combination, a needle cylinder, a series of needles in said cylinder, means for feeding both an inelastic thread and an elastic thread to at least certain of said needles, a thread cutter, a binder operative with said thread cutter, means for opening and closing said binder for binding and cutting

said threads, a second binder operable independently of said first binder for securing said elastic thread during the opening and closing operation of said first binder, and means for actuating said second binder.

"12. In a circular knitting machine, in combination, a needle cylinder, a series of needles carried by said cylinder, means for rotating said cylinder, a plurality of thread-feed fingers mounted adjacent said cylinder, at least one of which is adapted to feed an elastic thread, means for moving said fingers between feeding and non-feeding positions, means for maintaining said elastic thread-feed fingers in non-feeding position for predetermined revolutions of said cylinder, a top plate mounted above said cylinder, a main binder carried by said top plate and adapted to engage the threads extending between said needles and said fingers when said fingers are in non-feeding position, means for operating said main binder, an auxiliary binder mounted adjacent said main binder and operable independently thereof to engage said elastic thread and means for operating said auxiliary binder to secure said elastic thread when said main binder is opened during the period said elastic thread feed finger is in non-feeding position.

"13. In a circular knitting machine, in combination, a needle cylinder, a series of needles carried by said cylinder, driving means for rotating said cylinder, cam means for moving said needles through a stitch-forming movement, means for feeding an inelastic thread to all of said needles, a first binder for securing said inelastic thread at the end of a knitting operation, means controlled by said driving means for actuating said binder, means for selecting spaced needles of said series, means for feeding an elastic thread to said selected needles only, lockout means controlled by said driving means for rendering said needle-selecting means inoperative, a second binder operable independently of said first binder for securing said elastic thread, and means controlled by said driving means for actuating said second binder to secure said elastic thread during the operation of said lockout means."

The machines sold and delivered by the defendant to the Baker-Cammack Co. respond to the combination of claims 8, 12 and 13 of the Davis patent and constitute infringement.

An interference was declared April 16, 1937, No. 73,500, by the Patent Office between the application pending resulting in the patent in suit and an application owned by defendant. The defendant contested it through a final hearing by the Examiner of the Interferences of the Patent Office, dated Dec. 23, 1940, by which priority of invention of the subject matter in issue was awarded to Davis. Defendant abandoned, during the trial, its defenses of laches and estoppel. The defendant had full knowledge of the Davis application in 1937.

The evidence discloses that each element of the combination of claim 13, including the lockout means is found both functionally and actually in the accused machine. When claim 12 is construed to define the Davis Machine as it operates, which is proper in the circumstances here, it finds its counter-part in the accused machine.

Davis employs a plurality of inelastic threads and one elastic thread. Yarn fingers, one for each thread, are provided. Each feed finger, including those for the inelastic threads, can be held in non-feeding position when the particular thread is not being knitted. The first or main binder (clamp) carried by the top plate is adapted to engage all inelastic threads when their respective feed fingers are in non-feeding position. The specification of the Davis patent does not state that the elastic thread should or must pass under the main or first binder (clamp). Indeed it all depends on the height of the elastic feed finger as to whether the elastic thread goes into or over the main binder (clamp).

When claim 12 is construed in the light of the Davis teaching, the requirement for "a main binder carried by said top plate and adapted to engage the threads extending between said needle and said fingers when said fingers are in non-feeding position" must define the binding of inelastic threads particularly when the elastic thread feed finger is in feeding position.

Both the Davis and the accused machines embody a first binder, a cutter and a second binder. The first binder and the cutter operate together. The first binder opens and closes when the cutter opens and closes. The second binder is operated independently of the first binder. The first binder binds all inelastic threads. The cutter cuts all threads.

Claim 8 states "a thread cutter, a binder operative with said thread cutter, means for opening and closing said binder for binding and cutting said threads". The single cutter cuts all threads including the elastic thread, thus "said threads" is grammatically accurate as to the cutting function of the cutter. Additionally, the first binder does bind threads in the plural so that "said threads" is grammatically accurate as to the multiple inelastic threads fed to the needles. Defendant, however, urges that as a matter of language, claim 8 requires that the elastic thread in the Davis machine must be held beneath the main or first binder. Davis' patent does not so state. It is not necessary to so construe the amendatory insertions made in claim 8 to distinguish the Davis invention from the Bayles patent 1,921,902. Bayles employs a separate binder (clamp) for every yarn and in no instance does he hold multiple yarns in a single binder (clamp) and of course, Bayles discloses nothing at all in reference to feeding both elastic and inelastic thread to the needles.

The Interwoven stocking Company secured a set of attachments and drawings from Davis in 1935 and turned them over to the defendant as a pattern for building similar attachments for the Banner Machines owned by Interwoven. These attachments were made by defendant and invoiced to Interwoven. Even a slight variation in mechanical features would not affect the infringement. In this connection it is appropriate to mention the opinion by Judge Chestnut in Langston Co. v. Hooper Co., Inc., D.C., 8 F.Supp. 613 which was adopted as the opinion of the Circuit Court of Appeals, 79 F.2d 992. Judge Parker, in Oates v. Camp, 4 Cir., 83 F.2d 111, 113, speaking for the court, said: "Certain it is, however, that defendant's device operates upon the same principle as that of the patent, and accomplishes the same result, in the same way and by practically the same means." Skelton et. al. v. Baldwin Tool Works, 4 Cir., 58 F.2d 221.

### Validity.

Where an applicant for the purpose of avoiding a rejection on art cancels or amends a claim, he thereby disclaims that which is shown in the prior art and that which was defined in the original claim. To that extent, and only to that extent, is he estopped. He cannot enlarge the allowed claims to embrace the claims rejected. National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., C.C., 106 F. 693. Patentee is not estopped if the combination of the elements reserved in the allowed claims differs from the combination of the elements surrendered. Schriber-Schroth v. Cleveland, 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132. The *defendant's device is not the combination* of the original claims or of the Bayles patent but it is the substance of the claims allowed.

It is contended by the defendant that claims 8 and 12 are defective because they do not recite the needle selecting means. The mere failure to recite a detail essential to the operation does not invalidate the claims if the skill of the art can supply the detail or if the detail is shown in the specification. Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153; Brammer v. Schroeder, 8 Cir., 106 F. 918; Duncan v. Stockham, 7 Cir., 204 F. 781; Herman v. Youngstown Car Manufacturing Co., 6 Cir., 191 F. 579.

The claims define a true combination of elements which function in cooperative relationship to produce a new result.

The knitting machine of the patent in suit and the accused machine each embody a driving mechanism, control drums, a pattern drum, needle selecting means, lock-out means for the needle selecting means, operating links, levers and cams for the inelastic and elastic thread binders (clamps), all interacting in such timed relation one to another as to enable the production of a new article of hosiery.

The cutter common to both binders, and both binders, are all carried as a unitary assembly on a single plate. They are operated from the same power source. All element of the combination cooperate to produce a new and unitary result, namely a commercially acceptable automatic plain knit elastic top stocking. The new result is the product of the combination and not a mere aggregate of several results, each the complete product of one of the combined elements.

Patentable combinations have been approved in this circuit. It is useless to repeat the law. Imperial Bottle Cap and Machine Co. v. Crown Cork and Seal Co., 4 Cir., 139 F. 312; Baltimore Paper Co. v. Oles Envelope Co., 4 Cir., 89 F. 2d 279; Chesapeake and Ohio Railway Co. v. Kaltenbach, et al., 4 Cir., 95 F.2d 801.

The defendant relies on 8 prior art patents but no one of them defines a machine adapted or capable of use to produce a stocking such as is produced under the Davis patent and on the accused machine. There is no escape from the conclusion that the defendant appropriated plaintiff's patent and that the accused machine is not the result of prior art. Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778, 781.