## HEMPHILL CO. v. DAVIS CO.
### No. 5994.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1950.

Decided April 11, 1950.

Newton A. Burgess, New York City (L. P. McLendon, Thornton H. Brooks, Greensboro, N. C., H. H. Hamilton and

John S. Bradley New York City, on the brief), for appellant.

James P. Burns, Washington D. C. (Charles A. Noone, Chattanooga, Tenn., Robert E. Burns, New York City, and Welch Jordon, Greensboro, N. C., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit is brought to enforce the rights of the owner of United States patent No. 2,306,207 issued to Robert E. Davis on December 22, 1942, relating to a circular knitting machine adapted to knit elastic thread in combination with an inelastic thread in the top of a stocking. The machine was designed to manufacture hosiery composed of the knitted fabric covered by the Davis patent No. 2,306,246 issued on the same day as the patent in suit. The application for the fabric patent was filed June 26, 1935 and the application for the machine patent August 2, 1935. Both patents, together with thirteen others, were assigned in 1946 to the Davis Company, the plaintiff herein, a patent holding company whose formation and activities are described at length in our opinion filed simultaneously herewith in companion suits brought by the Davis Company against Baker-Cammack Hosiery Mills, Inc. and Baker-Mebane Hosiery Mills, Inc. for infringement of the Davis patent '246 and five other patents. By stipulation, the evidence taken in these suits, so far as it is germane, may be relied on in the pending case. 181 F.2d 550.

The defendant Hemphill Company, a Massachusetts corporation, is a manufacturer of knitting machines located in Rhode Island. It made, and in North Carolina sold to Baker-Cammack a so-called Banner machine, alleged to infringe the patent in suit. The District Judge found the patent in suit to be valid and infringed. 86 F. Supp. 188.

As will more fully appear in our opinion in the companion suit, the use of elastic together with inelastic thread in the top of the stocking has made it possible to manufacture on a plain knitting machine a complete stocking with a top having certain characteristics of the well known ribbed top stocking and to eliminate the common practice of first making the stocking top on a rib knitting machine and then transferring it by hand to a plain knitting machine for the making of the leg and foot. In the Davis fabric, as appears in the Davis patent '246, the elastic thread is locked in the top of the stocking under tension at "spaced wales in each of a plurality of spaced courses," and the machine shown by the Davis patent '207 in suit is designed to form this construction. It was not new in the industry to use a circular plain knitting machine to knit a plurality of inelastic threads, and machines had been developed for this purpose. Indeed many years before the Davis patents fabrics composed of elastic and inelastic yarns had been made, but had not led to the solution of the problem which Davis found. In view of these developments it was not necessary to devise an entirely new machine to make the Davis fabric, but only to make changes or additions to existing machines. Davis found that this was an easy matter, and he declared in his specifications as an advantage of his invention that "only a few and simple changes in the existing knitting machines are necessary to construct a machine according to applicant's invention." He showed in his patent drawings how this could be done by making the required alterations on a Banner machine of the defendant. They consist in general of (1) a needle selection mechanism to introduce the rubber in spaced wales at spaced courses; (2) an additional or auxiliary clamp or binder to hold the elastic thread under tension during the intervals when it is not being incorporated in the fabric; and (3) a control or lock out mechanism to take the needle selection mechanism out of operation during the intervals when the elastic is not being used. The important questions in the case are whether the changes made by the patentee to the existing Banner machine involved invention and whether they are found in the accused machine of the defendant. We do not reach the second question in this case because we are of the opinion that the

changes, although useful to effectuate the desired purpose, did not involve invention.

The knitting industry is a crowded art, and during many years knitting machines have been developed to a high degree of efficiency in the constant effort to meet the changing demands of the public. Textile Machine Works v. Louis Hirsch, Textile Machines Inc., 302 U.S. 490, 498, 58 S.Ct. 291, 82 L.Ed. 382; Scott & Williams v. Whisnant, 4 Cir., 126 F.2d 19. This fact is shown by the number and variety of the knitting machines in operation in hosiery mills and by the large number of product, process and machinery patents issued in this field. A number of these patents, it is agreed, were correctly described in the testimony of Frederick Ray, a consulting engineer, and qualified patent expert produced on behalf of the defendant. They have been cited in this case in anticipation of the patent in suit, or as indicating the state of the art or to limit the claims of the patent in order to prove that the defendant did not infringe. We shall refer to them to demonstrate that problems similar to that which confronted Davis have been frequently solved in the past and put into practice by expedients that did not differ fundamentally from the changes which Davis made in the Banner machines; and we reach the conclusion that whether or not these earlier patents involved invention when issued, they disclose a state of the art in 1935 in which nothing more than mechanical skill was needed to create the patented machine of Davis.

Significant in this respect are the statements of the expert for the plaintiff in this case, Robert H. Lawson, in his patent No. 1,996,648 which related to a sock having elastic knit in alternate wales. This patent was applied for October 20, 1930 and issued April 2, 1935 prior to the application of the patent in suit. Lawson pointed out that in order to feed the elastic to the needles it is necessary to retain it by a binder which he described as "the usual or other binder" consisting of a clamp and a cutter; and he added that a special form of clamp and cutting mechanism might be used if desired. Similarly, Davis provided an auxiliary or additional binder for the elastic, because it is kept under tension when used and because the main binder used for the inelastic yarn is open from time to time during the knitting operation. In other words, Davis made use of a device which was recognized by Lawson and others experienced in the art as a common expedient in such a situation.

Other patents show quite clearly that it is common in the art to provide binders or clamps in addition to the mainbinder for holding various kinds of yarn when they are out of action; for example, the Lawson fabric patent No. 1,843,086 of 1932, and the machine patents to Gagne No. 1,673,764 of 1928, Trudel No. 1,248,206 of 1917, Ballard, No. 1,608,194 of 1926, and Fisher No. 1,356,060 of 1920. In view of the common practice of adding binders or clamps when necessary for the holding of a particular thread, it cannot be said that the provision for an additional binder in this case involved invention.

Likewise it is common usage to provide needle selecting mechanism with a separate feed finger for each kind of yarn which can be used to incorporate a single thread where a plurality of threads are being knitted, as shown in some of the foregoing patents and in the Bayles patent No. 1,921,902 of 1933, Lawson No. 1,816,809 of 1931 and the British patent to Sturgess No. 4418 of 1886. Likewise it is customary to use a control or lock out mechanism to render inoperative the needle selecting mechanism for a particular thread when its use is not required, as in the Gagne, Bayles and Lawson patent No. 1,816,809. It is true that elastic was not used in most of these patents as one of the threads, but the mechanisms employed function in substantially the same manner with elastic as with inelastic yarn.

All of these expedients are also shown by the so-called Scott & Williams Triangle machine which was produced as a physical exhibit in the trial court. There was evidence tending to show that this machine was designed prior to the Davis machine but the District Judge did not find it to be entirely satisfactory or convincing. But whether the Triangle machine was prior

or not to Davis, it illustrates the ease with which difficulties of this kind are solved by the art of a skilled mechanic.

It is not necessary to examine these patents in greater detail and compare them with the patent in suit and to determine whether they establish anticipation and show precisely the kind of mechanisms which Davis used in his additions to the Banner machine. It is sufficient to show that there was no substantial difficulty in making these changes as the patentee himself pointed out in his specifications. We do not mean to suggest that invention is inconsistent with simplicity; there are many illustrations to the contrary; but rather to say that the Davis invention did not reside in his machine but in the fabric covered by his patent '246 which was upheld in the opinion in the companion case.

The principal which should govern us under these circumstances was enunciated by Chief Justice Stone in Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634, in considering the validity of a machine patent for making box blanks. The suit originally involved a patent for a device used in connection with the machine and a patent for a method for making the box, but by agreement was limited to determining the validity and infringement of the machine patent. Co-pending with this patent had been a product patent which covered a specific form of the box itself. The Supreme Court noted that the new method of box manufacture had a large and immediate commercial success and assumed that it involved invention; but pointed out that the inventive conception was found in the basic product patent which itself described the method or process by which the box could be made; and the court also showed that numerous details of the machine patent had been taught by the prior art. Therefore the court held that the machine patent involved only the mechanical skill to be expected of the calling.

In making this decision the court overruled the suggestion that since the two patents were co-pending, both the method and the machine as well as the product were patentable, in the following language, 282

U.S. 715, 51 S.Ct. 236, 75 L.Ed. 634; "The machine and work holder patents describe and claim only a combination of mechanical elements enumerated and arranged as stated in Claim 25, as we have construed it. This combination, which had been found suitable for manufacturing blanks with a plurality of pre-formed cleats and a single piece of side material, was suitable for using the process of the reissue patent, as is the combination used by petitioner. Such possibilities of use might be spelled out of the machine and work holder patents by one skilled in the art and familiar with the process described in the reissue patent. But nowhere do they describe or claim, as the invention of the patent, the new method or procedure of Inwood and Lavenberg, which was their improvement on the prior art. That is told in full in the reissue (product) patent, and it is there that the dominating new result appears. Obviously, from what we have said, if the method concept which underlay and preceded the machine had not been independently patentable, the machine could not have been. For the same reasons, the machine cannot be patentable merely because it is capable of use in applying a conception independently patentable."

See also U. S. Gypsum Co. v. Consolidated Expanded Metal Co., 6 Cir., 130 F.2d 888, 889, 891; Rosemary Mfg. Co. v. Halifax Cotton Mills, 4 Cir., 257 F. 321.

There can be no doubt that the fabric of the Davis product patent '246, rather than the Davis machine patent '207, was the dominating invention and produced great success and improvement in the manufacture of hosiery which have been described in the opinion in the companion case. Nor can there be any doubt that the Davis additions to the Banner machine involved only ordinary mechanical skill and did nothing more than to give effect to the inventive thought of the fabric patent by the use of well known mechanisms. It is true that both the fabric and machine patents were co-pending and were issued on the same day, and that there would be no improper extension of the monopoly of the fabric patent by upholding the machine patent, as was the case in Saranac Auto-

matic Machine Corp. v. Wirebounds Patents Co., supra; but the principle of that case is nevertheless applicable, since the patent in suit made no inventive contribution to the art.

The decree of the District Court is reversed and the case is remanded with directions to dismiss the complaint.

Reversed and remanded.