## JOHN OSTER MFG. CO. v. ALLOVER MFG. CO.

### No. 5839.

Circuit Court of Appeals, Seventh Circuit.

Dec. 16, 1936.

Rehearing Denied Jan. 7, 1937.

W. F. Buckley, of Milwaukee, Wis., for appellant.

George W. Wright and Casanave Young, both of Milwaukee, Wis., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

Appellant appeals from a decree holding patent No. 1,956,042 to Oster, for improvements in hair clippers, valid but not infringed by appellee.

The art of hair clippers is not new, and the patent in suit is secondary in character. It has to do with attachment of a cutter assembly to the remainder of an electrically driven hair clipper. Claim 3 is as follows:

"A hair clipper having a body portion, a unitary cutting assembly comprising cooperable cutters and guiding and tensioning means for the cutters, all connectible with and disconnectible from the body portion as a unit and connecting means between the unitary cutting assembly and the body portion permitting swinging movement of the cutting assembly with respect to the body portion and including interengageable coupling members between the cutter assembly and the body portion providing for the operative connection and engagement of the cutter assembly with the body portion and the disconnection of the same therefrom upon swinging of the cutter assembly relative to the body portion and disconnection of the coupling members relative to each other."

Most of the elements named are old. One, however, is clearly new, namely: "connecting means between the unitary cutting assembly and the body portion, permitting swinging movement of the cutting assembly with respect to the body portion." This element the applicant in his specifications fully described, saying that the "tongue is pivoted or hinged to the body portion" and that to remove the cutter assembly it should be "pressed forward and downward, the same motion being provided by the swinging of the tongue about its hinge or pivot." He specified a pivot pin extending "transversely between and supported at its ends" by a mounting plate fitted in the assembly.

Removable cutting assemblies in electrically driven clippers were old. Dremel in patents 1,764,614, 1,810,469, and 1,858,888 taught one method of attachment and detachment of such a removable assembly in his devices. His cutting assembly was slidable into the body of the clipper and there latched. Oster, therefore, was delving in

a narrow field, and in his specifications described and claimed a method of detachment and attachment of a cutting assembly differing from that of Dremel in that he pivoted the assembly at one end of the body of the clipper so that it could be swung unitarily away from the head of the clipper and then detached.

This feature, shown by his specifications and claims, embraces, we believe, the ground upon which his patent was deemed to achieve invention. After certain claims had been refused by the examiner as embracing no invention, in presenting amendments, he emphasized the novel feature in his device, as he claimed, namely, that in the operative position of the cutter assembly the parts are held together whereas "when the cutter assembly is swung relative to its mounting the cutter assembly is freely detachable." He contended that the prior structures cited by the examiner did not employ his inventive conception of an assembly engaging and disengaging "by swinging of the coupling members and assembly." This conception of a swinging movement from the body of the clipper was new. Whether it amounted to invention is not before us.

The patent being for an improvement, its interpretation is controlled by the language of the Supreme Court in Eibel Co. v. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 328, 67 L.Ed. 523, as follows:

"If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device."

Appellees' present device and appellant's patent were preceded by the Majestic clipper which is still manufactured by appellee and which follows the teaching of Dremel. Its present device, said to infringe, follows substantially the same method of construction. Its slidable assembly does not pivot, but slides into a groove where it is latched by a button or pin. The sliding member has been shortened, but the functions and mode of operations are essentially those of Dremel. There is no pivoting, there is no swinging away from the body of the clipper; there is rather an entirely different physical function—a sliding into a groove and latching. This structure is in no wise equivalent to the hinges and pivoted attachment of appellant.

In the District Court Judge Geiger pointed out that the essential question involved was whether there is in appellee's device, in any true sense, the pivoting construction employed by appellant. He remarked that appellee pushed the slidable cutting assembly into a slot and there left it; that this involved no swinging action in the true mechanical sense, no true pivoting or any pivoting essential to bring the cutting assembly into operative relation. We agree with this analysis and believe that appellee's construction is the substantial equivalent of Dremel and in no wise the equivalent of Oster.

The other claims differ somewhat in language. Claim 4 is more specific than 3. We doubt its validity in view of the prior art, for Oster was not the first to provide a movable cutter blade. Such teaching was old with Dremel, and appellee clearly follows Dremel in this respect. The claim also provides means permitting swinging of the cutting assembly and, as we have pointed out, this construction appellee does not employ. Claim 6 specifically calls for a "tongue pivoted to the body portion." Claim 10 includes "pivot means connecting the cutter assembly and the clipper body whereby the assembly may be swung to and from operative engagement." Appellee does not employ these means. Claim 11 includes "means for resiliently urging the cutting assembly into operative engagement with respect to the driving mechanism, whereby the cutting assembly may be operatively engaged with the driving mechanism while the latter is in operation." Appellee's device does not include any such means for resiliently urging cutting assembly into operative engagement but rather employs a wedge between the socket secured to the body of the clipper and the tongue of the cutter assembly for the purpose of rigidly securing the tongue on the locking pin.

Nor do we believe the employment of lugs and slots, whether by Oster or Dremel, involves anything more than the exercise of mechanical skill under the prior art.

The decree is affirmed.