**LYMAN GUN SIGHT CORPORATION v. REDFIELD GUN SIGHT CORPORATION.**

No. 1425.

Circuit Court of Appeals, Tenth Circuit.

Dec. 29, 1936.

Rehearing Denied Feb. 3, 1937.

Carle Whitehead, of Denver, Colo. (James S. Stewart, of Boston, Mass., and Albert L. Vogl and Frank A. Wachob, both of Denver, Colo., on the brief), for appellant.

Otto Friedrichs, of Denver, Colo., for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case presents for determination the validity of patent No. 1,901,399 issued to plaintiff as assignee of the inventor. Application for the patent was filed February 25, 1930, and it was issued in March, 1933. Holding that there was lack of novelty and anticipation, the court dismissed the bill and plaintiff appealed.

The patent relates to a front sight of a rifle and is adapted to use in target shooting. Claims 1, 2, 3, 4, 7, 8, and 9 are involved. The device includes a combination of elements consisting of a hollow, cylindrical, metallic hood about an inch in length and about half an inch in diameter in which interchangeable reticules are inserted. The hood is provided with a dovetail base which is forced into a dove-tail

slot positioned on the barrel of the rifle near the muzzle. It has a circumferentially directed internal seat or annular shoulder about midway its length and two horizontal slots extending from the rear end of the hood to the shoulder. It also has a hollow, threaded plug which screws into the rear end of the hood. A reticule is a thin circular piece of metal which fits closely inside the hood and has a sighting portion either in the form of an aperture or a post. It also has laterally directed ears or arms on opposite sides of the reticule. When the reticule is positioned in the hood, the ears or arms extend horizontally through the slots and beyond the periphery of the hood. Such extension makes it possible to grasp and hold the ears or arms with the fingers for placement or displacement of the reticule. Positioned in the hood, the reticule is firmly held there by tightening the plug which presses or clamps the reticule against the annular shoulder; and the plug also serves to close the slots and exclude light from the hood, except that which enters at the ends. The apertures and post arrangements differ in size, but all of them are so arranged that they coincide with the center of the circular edge of the reticule and thus give the proper concentric shooting position with respect to the hood and the rear sight, if there be one. Reticules may be changed rapidly without the use of tools thus providing the marksman with a plurality of sights for quick use on the field.

This combination of elements has its setting in a crowded art. Each element thus disclosed or its equivalent was taught in earlier patents or was in general use. A hollow hooded front sight with removable inserts or reticules was old. The Irion patent No. 1,387,987 taught a tubular hood and a circular reticule with crossed sight-wires. The Wanee patent No. 912,050 had a tubular hood, a threaded bushing, an annular recess and a transparent disc with a bead; but it did not have means either to prevent rotation of the disc or to lift it with the fingers. The Watson patent No. 830,868 was for a globe front sight with a V-shaped light-aperture, threaded bushing, and a circular sighting means set within the cylinder and held in position by screwing a hollow, threaded plug into the end of the cylinder, thus pressing the sighting means against an annular shoulder. The Maynard patent No. 318,999 disclosed a tubular hood sight with a transverse slot beginning at the top and extending halfway down the hood. Inserts with extended shoulders were dropped into the slot and the shoulders rested on the bottom of the slot. The insert was held in position with a turn-button. The Carlson patent No. 539,470 was for a tubular hood sight into which a ring with parallel cross-bars and with a bead at the center was inserted. The ring had projections on opposite sides which could be gripped with the fingers for the purpose of placing or displacing it. All of these patents were issued prior to the filing of the application for the patent in suit.

The Winchester Yoke Model was advertised in 1882, and has been in use since that time. It is a hollow, cylindrical hood with a transverse slot about midway its length extending from top to bottom, into which interchangeable reticules with sighting means are inserted. The reticule has a horizontal base which rests upon a flat surface below the hood and is held in position with a spring yoke on the outside of the hood. The insert extends slightly outside the hood and unless the spring is in gripped position it can easily be placed or removed with the fingers. The Winchester telescope sight was advertised in 1913. It includes a short tubular hood. A circular reticule is inserted horizontally into the hood through one end and is pushed forward against annular shoulder. The reticule has one ear which engages a horizontal slot and it is held in position by a hollow circular plug which is slipped in behind it, the plug being held in position by a screw through the slot. This is a rear sight, but experts gave convincing testimony that its transposition into a front sight could be readily achieved through means obvious to any skilled mechanic.

A union of selected old elements may constitute a patentable combination if by reciprocal or co-operative action on a common objective a new and useful result is effected or an old result is attained in a more facile, economical and efficient manner. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805; Skinner Bros. Belting Co. v. Oil Well Improvements Co. (C.C.A.) 54 F.(2d) 896; Independent Oil Well Cementing Co. v. Halliburton (C.C.A.) 54 F.(2d) 900; Stearns-Roger Mfg. Co. v. Ruth (C.C.A.) 62 F.(2d) 442; Dow Chem-

ical Co. v. Williams Bros. Well Treating Corporation (C.C.A.) 81 F.(2d) 495. But the mere use of antecedent elements to produce an old result is not invention. Paramount Corporation v. Tri-Ergon Corporation, 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997. Neither does the production of a new device by the rearrangement or manipulation of known elements through application of ordinary mechanical skill constitute invention although it may have required study, effort, and experimentation. Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Electric Cable Co. v. Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131.

■ Where a patent includes a combination of elements, it is not necessary to establish anticipation that all of the elements be found in a single earlier patent or in a single device previously in general use. It is enough if the evidence, taken as a whole, discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use, and no new functional relationship arises from their combination. Busell Trimmer Co. v. Stevens, 137 U.S. 423, 11 S.Ct. 150, 34 L.Ed. 719; Linville v. Milberger (C.C.A.) 34 F.(2d) 386; Reflectolyte Co. v. Luminous Unit Co. (C.C.A.) 20 F.(2d) 607.

■ The Winchester yoke structure employed a vertical slot while the slots in plaintiff's patent are horizontal, but that is a minor feature of mechanical skill, not inventive genius. John Oster Manufacturing Co. v. Allover Mfg. Co., 86 F.(2d) 807. And, in departure from some of the earlier patents, the ears or arms here are made longer so that they extend beyond the hood and may be grasped in the fingers for placement and displacement which eliminates need to use a screw driver or other tool in making the change, but such extension for that purpose is likewise obvious mechanical skill as distinguished from inventive genius. The outstanding result which the device produced was that the change of reticules could be made quicker and easier. That was effected through a combination of old elements with changes and additions which one skilled in the calling would make in the natural development of the art. It was the product of mechanical skill, not a new result or an old result accomplished in a better and more facile way through inventive genius.

■ Commercial success of the invention is urged as strong evidence of novelty and utility. Where the claims and other facts and circumstances render the question of novelty fairly open to doubt, general use by those engaged in the industry with widespread displacement of other devices which had been used to perform the function may be taken into consideration. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800; Paramount Corporation v. Tri-Ergon Corporation, supra; Dow Chemical Co. v. Williams Bros. Well Treating Corporation, supra. But it is only a circumstance of evidentiary potency and does not add controlling force to the assertion of invention if there is no substantial doubt respecting the question of novelty. Paramount Corporation v. Tri-Ergon Corporation, supra. Since that question is not attended with doubt here, the rule contended for has no application.

The decree is affirmed.