SPECMADE PRODUCTS, INC.

v.

J. A. BARNETT, d/b/a Barnett Supply Co., J. H. McDonald, A. McPherson, George B. Bowling, a co-partnership, d/b/a McDonald, McPherson & Bowling.

Buxbaum Products Co. and E. Z. Manufacturing Company, Intervenors.

Civ. A. No. 7717.

United States District Court
N. D. Georgia,
Atlanta Division.

April 16, 1964.

Judgment Affirmed Jan. 12, 1966.

See 354 F.2d 229.

Newton, Hopkins & Jones, Atlanta, Ga., Christie, Parker & Hale, Pasadena, Cal., for plaintiff.

K. Wilson Corder, Atlanta, Ga., Frease, Bishop, John & Schick, Canton, Ohio, Albert A. Teare and Donald A. Teare, Cleveland, Ohio, for defendant and intervenor.

HOOPER, District Judge.

Plaintiffs in this action are Specmade Products, Inc., a corporation of California, and Richard G. Butler, a resident of California, as owners of Patent No. 2990736 issued to plaintiffs on July 4, 1961 covering (in Claims 1 to 3 inclusive) a method of repairing tubeless tires, and (in Claims 4 to 10) the tools to be used therein, the inventor being Loid Crandall.

One defendant, J. A. Barnett, resides in Atlanta; defendants J. H. McDonald, A. McPherson and George B. Bowling, doing business as a partnership, also reside in Atlanta. Buxbaum Products Company of Ohio and E. Z. Manufacturing Company of Ohio have intervened in this action. While the jurisdiction of this Court is now questioned, objections thereto are OVERRULED.[1] Defendants denied infringement, disputed the validity of plaintiffs' patent, and asserted a special defense of mis-use of patent by the plaintiffs. The validity of plaintiffs' patent is discussed below:

PLAINTIFFS' PATENT.

1– This patent relates to a method of repairing tubeless tires without removing the tire from the wheel. The principal controversy revolves around the method claims, being Claims 1 to 3 inclusive. The tools in question will be briefly described in connection with the method claims, however.

The first step in the process is to insert in the puncture hole an instrument called a "probe."[2] The probe when pushed through the puncture hole does to a slight extent expand the same, and it is then withdrawn.[3] Plaintiffs' probe,

[1] Regardless of what the evidence subsequently showed, there were good faith allegations that defendants Barnett and Bowling were guilty of contributory infringement in this district by selling certain repair tools, in conjunction with instructions as to their use, such instructions being allegedly a method which infringes plaintiffs' method claims. The intervenors cannot object to the jurisdiction of the Court which had already attached.

[2] A similar instrument is used in several prior patents, although plaintiffs contend there is a unique feature in their probe, and that it contains annular grooves designed to better hold a lubricant, or cement. It is a very simple instrument despite much involved language in Claim 4 and other portions of the patent, such as "striations on lands defined by said grooves" (see Column 8, line 32).

[3] Reference is made now and subsequently to arguments by counsel contained in Transcript dated December 9 and December 10, 1963, and references to Transcript,

and that of another patent, each remove only a slight bit of rubber, and there is very little cutting of the cords in the tire. The probe is removed and then there is inserted in the puncture hole an instrument termed a "guide."[4] When the guide has been placed in the puncture hole a plunger containing a rubber repair plug is thrust through the guide, and as the head of the plug emerges from the far end of the guide, it is first folded back and then expands to its normal shape. At this point a description of the plunger and rubber repair tube is necessary.

The plunger (sometimes referred to as the plug carrier) is essentially a hollow cylinder of small diameter several inches long, with a handle in the form of a disc at one end.

The "plug element" consists of three parts: The head of the plug, and then a portion of the stem attached to the head, and then the remainder of the stem, same being of reduced diameter.[5] The rubber plug is placed in the plunger in the following manner. The tail end of the plug, having a small diameter, is inserted into the end of the plunger opposite the handle of the same and is pushed on through until it emerges from the other end, whereupon it is caught by the hand and pulled; this pulling naturally reduces the larger diameter of the tail of the plug and permits such larger diameter to be pulled into the plunger until the head of the plug rests against one end of the plunger. This part of the process is very important because it involves all of plaintiffs' claims in their

patent concerning "applying longitudinal tension to reduce the diameter of the solid stem," and (as contained in Claim 1 of the patent) inserting the tire repair plug "with a portion of the stem held under a condition of reduced section." This is subsequently hereinafter discussed. The puncture hole having been previously lubricated by dipping the probe in lubricant and inserting it in the hole, and the guide containing the plunger and the tube having been inserted herein, the next step is to pull the guide out of the puncture hole and this causes both the guide and the plunger to leave the same, and causes the head of the plug to be pressed against the interior of the tire, and the tail of the plug to be stretched and pulled through the puncture hole, and extending beyond the outside of the casing, the excess being then cut off. It is just at this point that most of the controversy in this case arises, as it appears from the file history that this feature was added by amendment to plaintiffs' patent, causing the same to be allowed after it had previously been rejected.

The foregoing covers in a general way Claims 1 to 3, being the method claims, and it also touches upon Claims 4 through 10, covering the apparatus or set of tools used. Claims 4 through 7 concern the probe, Claims 8 and 9 cover the combination of the probe and guide, and Claim 10 calls for the combination of the guide and the plunger. These tools display the utmost simplicity and appear in various forms in prior patents, the differences being for the most part only in degree. In some patents the guide is larger; in

until otherwise indicated, refer to the same. See full discussion as to "temporary enlargement of the puncture hole" by the probe contained in Transcript of December 9, page 19.

4. This is also referred to as a "hole expanding means", see Claim 8, column 4, line 45. Also Claim 9, column 8, line 55. Other patents use an instrument similar to the "guide", but they vary in size. This Court finds that the chief virtue in plaintiffs' "guide" is that it affords a means whereby the plunger containing the rubber plug may be thrust through the guide, putting the head of the plug in-

side of the tire casing so that when the guide and the plunger are both withdrawn, the head of the plug will be fitted tightly against the inside of the casing and the tail end of the rubber plug will fill the puncture hole. Discussion of the novelty of this process, however, will be had later on.

5. As stated by plaintiffs' counsel (Tr. Dec. 9, p. 22): "The puncture hole is then held in the expanded condition * * * while a headed rubber plug, the stem of which has been placed in a condition of reduced section in a plunger is inserted through the expanded hole."

most of them the probe does not have quite a plurality of "annular grooves," and there are other variations.

Before the Patent Commissioner applicants for this patent urged novelty and invention in this respect: That when the guide and plunger were withdrawn from the tire, the tail of the rubber plug as it left the plunger would expand, the wall of the tire as the plunger left it would contract, thereby giving a tighter, safer and better result than previous patents afforded. The patent refers to a "lateral outward flow of the rubber." [6] Discussion before the Court on this phase is contained in the Transcript of December 9, beginning at page 24. This Court was at first of the opinion that "when you pulled the guide and plunger out (the rubber plug) does tend to expand." (See p. 25) That, however, is not correct. The facts bear out statement made by defense counsel (see p. 26): "As you pull it out you cannot expand. You reduce it. Stretch it. Its only after you let go that the tendency to expand * * * would be up for consideration." With that statement the Court agrees. A careful consideration of the evidence in this case bears out the above. Physical laws also make such a finding mandatory. Regardless of whether or not the tail of the rubber plug while in the plunger is in a state of compression or tension (it is really in both),

this Court will take cognizance of the fact that, as the plunger is pulled out of the tire the tail of the rubber plug (the head of the same being fixed inside the tire) will be stretched, and such stretching necessarily reduces the diameter of the stem of the plug. It is true, that as the plunger leaves the stem, the temporarily expanded walls of the puncture hole close in and encase the stem and hold it aided by the lubrication (or cement). This process continues until all of the enlarged portion of the plug stem has emerged from the plunger. When the plunger completely leaves the puncture hole some of the stem still extends beyond the tire, and it is cut off. If there were a subsequent expanding of the stem there would necessarily have to be a shortening of its length, but that does not occur. Furthermore, tests made by the defendants (not controverted by similar tests in behalf of plaintiffs) show that an actual cross-section of the tire, containing plaintiffs' repair, shows the plug stem to be no larger (and perhaps smaller) than it was while contained in the plunger, which shows conclusively that it did not as it emerged from the plunger "flow outward." [7]

This Court therefore finds that, in the use of plaintiffs' patent, there is a tight fit, but it is not shown that the same thing does not pertain to other processes, and this Court finds there is not any

6. Emphasis placed on this "lateral outward flow of the rubber" as repeated many times in the patent as issued. The patent states: "The elongated stretched body of the plug member is stripped out of the plug carrier, fills the puncture hole and the resilient material of the plug element tends to flow into the hole to provide a complete seal". (See Column 2, line 16). The "body portion" of the tail of the plug "will be under longitudinal tension and will grip the inner wall of the tube * * *" so that the tail of the tube cannot be disassembled therefrom except by application of force." (Column 4, line 45). When the plunger is withdrawn the tail of the plug is "under longitudinal elongation" and when completely withdrawn this "tends to reduce such longitudinal elongation and attempts to return the body portion" of the tail of the plug to its normal diameter. (See Column 6, line 5, et seq.) Claim 1 al-

leges "said tensioned portion after deposit being flowable laterally outwardly to increase said reduced section for providing a tight seal with walls of the puncture hole." (See Column 7, page 68) This last statement in Claim 1 is rebutted by the evidence.

7. This Court has come back to the conclusion tentatively reached at the time of the hearing (see p. 29 as follows: "Now as you pull the plunger out, the tube inside that hole is stretched, which makes it smaller. You've got glue on there. The hole in the casing is contracting. If that contraction comes in there and holds that thing, it will prevent some expansion in the tube which normally you would have." The Court also then stated (see p. 30): "But, if your hole in the casing *after you release the plunger*, is drawn into a point that it will stop this expansion, then you have accom-

expansion but on the other hand, a contraction as to the diameter of the plug stem as it leaves the plunger. Had this test been made by or for the Patent Office Examiner, it would appear that plaintiffs' patent would never have been issued.

There is much controversy in this case as to proceedings before the Patent Office concerning the three patents issued to Sloper.[8]

As this Court will hereinafter point out, no one prior patent contained all of the tools and all of the methods employed in plaintiffs' patent, which is a combination patent. The fact that some elements of the Sloper patents are "paper inventions" does not destroy their efficacy as a prior art. A significant feature of the Sloper patents is primarily this: They contemplate among other things, the use of the guide, of a plug (identical to the one used by plaintiffs and referred to as Figure 12–E in the Sloper patents), and a plunger through which the stem of the plug is tightly drawn.

### OTHER PATENTS CITED TO PATENT OFFICE.

Also cited was patent of Moomy, No. 567402 of September 8, 1896. Diligent counsel for plaintiffs have pointed out a great many respects in which Moomy's process differed from that of plaintiffs (Crandall patent). This Court is approaching the matter from an opposite direction, to-wit, the elements in Moomy which preceded Crandall and were not new. While there are many differences it appears that in Moomy there is an equivalent of a guide, though it is of a funnel shape. A rubber plug having a head and a stem is forced through the smaller end of the guide after the latter has been forced through the puncture hole. When the head of the plug emerges from the end of the guide the latter is then withdrawn from the puncture hole until the head of the plug is tightly against the inner surface of the tire and then the funnel (guide) is withdrawn still further leaving the head and the stem of the rubber plug in the puncture hole, just as in the Crandall patent. Moomy does not contain the feature upon which Crandall placed so much emphasis (being the feature by which primarily he obtained his patent), to-wit, the alleged tension in the stem of the plug, the subsequent outward flow of the same, and the tight fit obtained thereby.

The Patent Office also cited patent to Griswold, No. 5498649, issued December 7, 1897. In that patent there was a guide, substantially larger than the one used in Crandall. With this guide "a rubber plug may be inserted into a puncture in the tire without enlarging the puncture and without removing the tire." This guide "expands the puncture, and an inner compressible carrier plunger which is forced through it and carries a rubber plug into the tire and is then

---

plished the very thing that the inventor was hoping to accomplish, which is a tight fit."

8. Reference is here made to defendants' Exhibit 1 (the file wrapper) beginning at page 30 where applicant informs the Patent Office that Sloper does not contemplate "stretching * * * the plug and holding it in such longitudinal stretched position." Applicant insisted "the shank of applicant's plug could be stretched and held in a stretched condition" (p. 34). The Patent Office pointed out applicant's claims were still met by Sloper as "these claims merely recite a means with an expandable tapered portion and a tubular plug carrier" (see p. 35), pointing out that in previous patents "the stem of the plug is compressed in the end of an inserting or holding tube, said plug is under longitudinal tension, etc." (see p. 36). It also pointed out "no invention would be involved in using the probe of Cox with the hole expanding means of Sloper" (p. 37). By way of response applicant caused Claim 3 to contain this language: "A method of repairing a puncture hole * * * including the step of simultaneously progressively relieving the temporary expansion of the puncture hole while sequentially depositing adjacent portions of the tensioned and reduced diameter stem in said hole, whereby the material of said stem and said resilient wall flow simultaneously toward each other for providing a tight seal and closure of said puncture hole."

withdrawn, leaving the plug in the puncture." The rubber plug, however, has a very short stem and it is inserted in the end of the plunger, but it is not run through the plunger as in Crandall. Claim 1 in Griswold covered the combination of the guide and the plunger. Claim 2 covered the guide, the plunger and the cap attached to the plunger. Claim 3 covered the combination of the guide, the tapered end and the groove in the guide, the plunger and the cap. Here too the stem of the plug was not drawn through the plunger and there is no claim as to contraction and expansion of the stem of the plug, but Griswold does use the combination of guide, plunger and plug and the principle of withdrawing the guide from the puncture hole leaving the head of the plug against the inner wall of the tire and the stem in the puncture hole.

There was also cited to the Patent Office the patent issued to Jones, July 12, 1898, which employed a guide through which was passed a plunger containing a plug with a short stem, and here too the plunger and the stem were passed through the guide until the head of the plug expanded, whereupon the plunger was withdrawn leaving the head of the plug inside the tire and the stem of the plug in the puncture hole. The end of the guide had a "plurality of spring fingers", cement was used, and there was no claim covering a probe, nor any claim of contraction and expansion of the stem of the plug as in Crandall.

Other prior patents cited to the Patent Office but not fully discussed by counsel in this case, are the following:

| | | |
|---|---|---|
| Heffernan | No. | 189,732 |
| Cox | No. | 566,562 |
| Herrick | No. | 616,572 |
| Sutton | No. | 725,171 |
| Hirst | No. | 1,545,831 |
| Young | No. | 1,597,945 |
| Wesseler | No. | 2,293,374 |
| Everett | No. | 2,638,961 |
| Westfall | No. | 2,727,554 |
| Westfall | No. | 2,804,792 |

## PRIOR PATENTS NOT CITED TO THE PATENT OFFICE.

A very successful patent was not cited to or considered by the Patent Office, same being that issued to Remaco, Inc. in 1956, covering the "Rema" method, and was very much discussed during the trial of this case. Defendants' Exhibit 28 contains the tools which are used in the "Rema" patent, as well as the plugs. The probe is very similar to plaintiffs' probe, having spiral indentures winding around it. The plunger contains a rubber tube with a conical head, such as used in plaintiffs' patent. There is a material difference in the manner by which the plunger and tube are forced through the puncture hole, as "Rema" provides an instrument containing a strong spring which when clamped over the puncture hole and released causes the spring to force the plunger and plug through the hole, whereupon it is then withdrawn by a pull on the plunger, leaving the head of the rubber plug against the interior wall of the tire casing, as in the case of plaintiffs' patent.

Evidently the "Rema" method had been meeting with some commercial success. As shown by defendants' Exhibit 2, its operation was described in a brochure sent out by Remaco, Inc. in January, 1956. The various steps used in the "Rema" process include the cleaning of the puncture hole, pressing vulcanizing paste into the hole, pulling neck of the plug into the guide tube (plunger), locking the guide tube in a "TT gun", pushing the plug into the puncture, injecting the rest of the vulcanizing paste, and what is important, "retract metal tube from puncture." That same exhibit shows description of the "Rema" method advertised in "Chevrolet Service News", July-August, 1956, and in "1958 Ford Car Shop Manual." The same exhibit contains an article entitled "Pneumatic Tires" by Henry C. Pearson, Editor of the India Rubber World (1922) where the use of plugs with heads (together with cement) is described. It points out how the head of the plug is "withdrawn

and the plug is drawn back to bring the umbrella head into firm contact with the inside wall of the tire."

As to the effect of Rema not being before the Patent Office the Fifth Circuit Court of Appeals has frequently stated:

"The Courts have held to the proposition that the presumption of validity is unavailing and the patent should be carefully scrutinized when pertinent prior art was apparently not considered by the Patent Office during the pendency of the application," see Rosaire v. Baroid Sales Division, National Lead Company, 218 F.2d 72, 75 (CA 5, 1955); Cornell v. Adams Engineering Co., 258 F.2d 874, 875 (CA 5, 1958); Murray Co. of Texas, Inc. v. Continental Gin Co., 264 F.2d 65, 69 (CA 5, 1959); and Glikin v. Smith, 269 F.2d 641, 651 (CA 5, 1959).

The Fromberg patents, No. 2,828,657 and 2,828,791 were fully considered on the trial and much testimony concerning same given by Mr. Springfield and Dr. Hoover, expert witnesses for the parties.

Fromberg patent No. 2,828,791, issued April 1, 1958, concerns a rubber plug which is used to fill the puncture hole in a tire, as does the Crandall patent. This plug, however, is of cylindrical shape which is placed in "a tube of relatively thin stiff or rigid material", corresponding to Crandall's plunger, so that after the tubular shell is withdrawn a stem of the plug is retained in the tire by an enlarged head on the inner end and, upon removal of the shell, a corresponding enlarged head is provided on the outer end, with the intermediate part of the plug or stem remaining in the tire. Claim 1 pertains to the combination of the tube and the cylindrical plug which, after removal of the tube, expands frictionally against the wall of the opening. Claim 2 pertains to the combination of the said rigid tube and the plug similar to Claim 1, as does Claim 3. Reference to Figure 5 of that patent shows the contraction of the rubber plug to be considerable and therefore its subsequent expansion

against the walls of the puncture hole will cause a tight fit. The plug does not contain a head as does Crandall, nor a long stem of small diameter as does Crandall.

Fromberg patent No. 2,828,657, also issued April 1, 1958, involves a rubber plug which is inserted through the puncture hole so that the head of the plug extends inside the tire, the portion of the plug within the puncture hole is greatly contracted and the small portion extending outside the tire resumes its natural size. The apparatus, however, by which this plug is forced through the tire is very complicated and does not possess the ease and simplicity of Crandall in respect to forcing the headed rubber tube through the puncture hole in the tire. The Fromberg patents attained commercial success. They do not, however, bear as close relationship to the Crandall patent as does Sloper (which uses a guide and plunger) and other patents which also utilize a guide and a plunger, and a plug with a conical head.

Many patents are cited by defendants (see defendants' Exhibit 2 containing the same) which also pertain to repairing pneumatic tires by inserting through the puncture hole a rubber tube having a conical head and then pulling the tail of the tube so as to force the head against the inside of the tube. See Sutton #725,171; Young No. 1,576,491; Anderson No. 1,897,028, and others.

## CONCLUSIONS OF LAW.

■ 1– This Court has jurisdiction of the parties and the subject matter of the suit as there are good faith allegations of infringement allegedly committed in this jurisdiction by defendants Barnett and Bowling, and since Buxbaum Products Co. and E. Z. Manufacturing Company voluntarily intervened in the action as parties defendant.

■■ 2– Defendants have attacked the validity of plaintiffs' patent upon the ground as alleged, that it was anticipated by many prior patents and therefore it did not possess novelty and invention. The principle which has guided this

Court to its decision in this case, as stated by the Fifth Circuit Court of Appeals, is the following:

"The essence of patent anticipation cases lies in the fact that the inventive thought in both the anticipating and patented devices in the same, not merely that one process might possibly perform another function. Walker on Patents, Section 51, p. 274. 'Where a patent includes a combination of elements, it is not necessary to establish anticipation that all of the elements be found in a single earlier patent or in a single device previously in general use.

It is enough if the evidence, taken as a whole, discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use, and no new functional relationship arises from their combination.' Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 1936, 87 F.2d 26, 28." Fairchild v. Poe, 259 F.2d 329, at p. 332.

The above principle of law has been applied a number of times by the Fifth Circuit Court of Appeals, as pointed out below: [9]

9. In the case of Stabler v. Bright Leaf Industries, Inc., 261 F.2d 383, Judge Wisdom, speaking for the Court stated the following:

"The mere aggregation of a number of old parts or elements which, in the aggregation, performed or produced no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

It was further stated:

"Inventions require close scrutiny lest patent monopolies be granted to 'each slight technological advance in an art' merely because it is useful. * * * The essential factor or element of invention is not established by the fact that the combination of elements has produced a system or apparatus that is more useful in the art than any pre-existing system."

A case was cited ruling that the addition of a flywheel to a standard sound recording device, giving the needed uniformity of speed, was not invention. In the instant case nothing as substantial as a flywheel was added to pre-existing methods.

In Reed v. Parrack, 276 F.2d 784 (5 Cir.) infra, the same Court, speaking through Judge Brown, gave the following discussion as to combination patents:

"Inventions require close scrutiny lest patent monopolies be granted to each slight technological advance in an art, merely because it is useful * * * The essential factor or element of invention is not established by the fact that the combination of elements has produced a system or apparatus that is more useful in the art than any pre-existing system."

In Reed v. Parrack, 276 F.2d 784 (5 Cir.) infra, the same Court, speaking through Judge Brown, gave the following discussion as to combination patents:

"The novelty is not in the elements. Indeed, in many, if not most, patents for a combination * * * the individual components are old, well known parts. The novelty which warrants the patent is in the way in which these things known to skilled artisans are combined to produce a new result or an old result in a new and better way."

In the case of Little Mule Corporation v. Lug All Company, 254 F.2d 268, the Fifth Circuit Court of Appeals, speaking through Judge Rives, decided by a divided court, that even assuming

"that something new has been added, it must be something that mere mechanical skill could not achieve. '* * * a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means *with better results*, is not such invention as will sustain a patent.'" See p. 275 (Italics supplied)

In the case of Robertson Rock Bit Co., Inc. et al. v. Hughes Tool Co., 176 F.2d 783, the Court, speaking through Judge Hutcheson, stated:

"A combination is patentable although each of its constituent elements was well known in prior art, if the combination produces a new and useful result and not merely the aggregate of several old results or if it produces an old result in a cheaper or otherwise more advantageous way." (See p. 790)

In the instant case plaintiffs' process does not seem to be cheaper, nor does it affirmatively appear that the results are better than those attained by use of prior patents.

A review of the prior arts hereinabove discussed will disclose the fact that there is nothing materially new in regard to any of the tools referred to in Claims 4 to 10 inclusive of the Crandall patent, nor anything substantially new in regard to their combination and use.

Much emphasis is placed by plaintiffs' counsel upon the granting of this patent by the Patent Office, even after the Examiner had cited the Sloper patent as a conflicting prior art. There are two answers to this contention, however. In the first place, plaintiffs' patent was represented to the Patent Office as being novel, in that when the guide and plunger were withdrawn the tail of the tube "flowed outwardly" and expanded to a size greater than the inside diameter of the plunger, but the evidence in this case clearly shows that in practice it does not do so.

█ In the second place, plaintiffs' patent moved and competed in a very crowded field and therefore must be subjected to a narrow construction; it had some difficulty in getting by the Patent Office on account of many prior arts, and now defendants inject a great many more not considered by the Patent Office. See Reed v. Parrack (5 Cir.) 276 F.2d 784, p. 786, where Judge Brown speaking for the Court referred to the patent therein under discussion as being

"in an already crowded field requiring a narrow construction and a like narrow range of equivalents,"

and pointing out that the foregoing was proved

"by the disclosure of the numerous prior patents cited as a reference in the patent itself, the file wrapper of its slow and tortuous passage through the Patent Office, as well as numerous other prior patents."

This Court has not overlooked the presumption of validity based upon the issuance of plaintiffs' patent.

█ 3— This Court has also carefully considered evidence concerning the commercial success attained by plaintiffs' patent. It is repeatedly pointed out by the courts, however, that commercial success does not prove invention, nor is invention necessarily shown because the patented device obtains a better result than previous devices. In the case of Stabler v. Bright Leaf Industries, Inc. (5 CCA) 261 F.2d 383 as to the patent in question it was stated:

"Its commercial success is beyond doubt. Better curing was achieved. The problems of the industry were

This Court does not mean to intimate that there are not two sides to this question in the instant case. Indeed, many cases can be cited showing that a combintion of old elements does produce better results, and therefore constitute invention. This phase of the matter is clearly and forcibly brought out by the distinguished Judge Learned Hand of the Second Circuit Court of Appeals, in the case of Reiner v. I. Leon Co., Inc., 285 F.2d 501 (1960). He points out that " * * * the Act of 1952 meant to change the slow but steady drift of judicial decision that had been hostile to patents." (P. 503)
His emphasis, however, was more upon the phase of this matter having reference to whether the alleged inventor had "ordinary skill" than on the phase of the matter above discussed, to-wit, whether there was a material improvement over the old process. In the case of Elrick Rim

Company v. Reading Tire Machinery Co., 264 F.2d 481, the Ninth Circuit Court of Appeals held the patent in question to be valid although it made use of the essential features of a prior patent, pointing out:
"It is a new use, however, not only in the sense that the device is used to spray a nonpaint material, but also because essential elements of the device are employed in a manner different from that originally intended."
It was pointed out that the prevailing party,
" * * * finally hit upon a way to overcome almost all"
the problems confronting the trade, that, "The need for such a development was urgent. Yet, despite the efforts of trained mechanics in this industry, no one had found the answer until Reading came along."

answered. It appears that the plaintiff is one of the largest manufacturers of gas-fired tobacco curing systems today."

Nevertheless it was pointed out that the combination patent in question while it was

"* * * an improved system combining old elements of the art in such a manner so as to give rise to better results".

could not be raised to the dignity of invention (H.N. 2, p. 384). The Court further stated:

"The essential factor or element of invention is not established by the fact that the combination of elements has produced a system or apparatus that is more useful in the art than any pre-existing system." (See H.N. 6 at p. 385).

Likewise, the Fifth Circuit Court of Appeals in Fairchild v. Poe, 259 F.2d 329 pointed out that the device in question did not constitute invention, stating as follows:

"The plaintiff seeks to combat this defense by a showing of the commercial success of the patent. We do not doubt its success or acceptance in the art. Mere commercial success, however, will not create patentability." (See p. 332)

On this point the United States Supreme Court stated the following:

"* * * we think the evidence of utility and prompt acceptance of the patented method, in the circumstances of this case, adds little weight to the claim of invention. * * * Evidence of great utility of a method or device, it is true, may in some circumstances be accepted as evidence of invention. Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill." See Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, at p. 474, 55 S.Ct. 449, at p. 453, 79 L.Ed. 997.

Many other cases could be cited by this Court from the full and comprehensive briefs filed by counsel for the parties, each of them having exhibited unusual ability and industry in the preparation and trial of this case.

█ It has been with some reluctance that the Court has reached the conclusion of invalidity of plaintiffs' patent, for the reason that the inventor, after having sold his patent to the plaintiffs (in whose name it was issued), immediately proceeded to assist defendants in an effort to infringe it. This Court has been forced, however, after long and careful consideration, to the conclusion that plaintiffs' patent does not possess invention as that term is defined and illustrated by the overwhelming weight of authorities.

A reasonable length of time will be accorded parties to point out any and all inaccuracies or omissions contained herein, and portions of this Opinion may have to be corrected, or re-written.

Let a copy of these Findings be served upon counsel.