**David J. LEVINSON, dba Dav-Lo Company, Plaintiff,**

v.

**NORDSKOG COMPANY, INC., and Robert A. Nordskog, Defendants.**

**Civ. A. No. 67–672.**

United States District Court
C. D. California.

July 7, 1969.

Beehler & Arant, Vernon D. Beehler, Bruce A. Jagger, Los Angeles, Cal., for plaintiff.

Kendrick & Subkow, Elwood S. Kendrick, John P. Scholl, Los Angeles, Cal., for defendants.

WILLIAM P. GRAY, District Judge.

The plaintiff in this case is the original patentee and current owner of United States Patent No. 3,260,190. The patent concerns a device designed to brew coffee in the original can by perforating the top and bottom and passing hot water through the ground coffee contained therein. In conceiving and perfecting his invention, the plaintiff contemplated that its principal (or perhaps exclusive) use would be as part of the equipment of galleys in commercial airplanes.

The plaintiff charges the defendants with infringement of his patent. The defendants have put into issue the validity of the patent and have moved for summary judgment. The matter has been briefed and argued and submitted for decision. For reasons set forth in this memorandum, the motion will be granted.

The facts upon which the forthcoming summary judgment for the defendants is based are asserted, and thus established, by the plaintiff: He conceived his invention in the spring of 1956, and in 1957 he completed and successfully tested the only model of it that he ever made. One evening in the last mentioned year he exhibited his model to a Mr. Duffy, a representative of American Airlines. Mr. Duffy promptly discouraged the plaintiff by expressing the view that the commercial airlines would not be interested in the device. This comment "kind of created a mental block" in the plaintiff's mind. He left the device shut up in the basement laboratory (later in the garage) of his home, told his attorney that if a market for the device should ever develop he wanted to patent it, and otherwise forgot about it. About five years later, in September 1962, Mr. Duffy advised the plaintiff that American Airlines had become interested in "the can idea" for brewing coffee. At that point, the invention, in the plaintiff's words, "came back to life," and he contacted his patent attor-

ney and presumably instructed him to prepare a patent application. The application was filed on September 23, 1963, but the plaintiff still kept his invention secret until the patent issued, on July 12, 1966.

In the meantime, and at least by December 4, 1962, the defendants were seeking to sell to commercial airlines a coffee maker that the plaintiff contends infringes his invention.

The question for decision here is whether or not a person who, after conceiving and perfecting an invention, keeps it secret for five years until he thinks that it would receive a more favorable market, thereby forfeits his right to obtain a patent covering such invention. It seems to me that this question, under the law, must be answered in the affirmative.

Substantially the same issue was involved in Woodbridge v. United States, 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923), in which the plaintiff had filed an application for a patent on an invention pertaining to a rifled gun projectile. A month later, in submitting amended claims in a form that the Patent Office had agreed to allow he requested that the resulting patent, or the order to issue the patent, be held in secret by the Patent Office pending his ability to obtain a foreign patent. The Patent Office complied. Nine and one-half years later, the plaintiff requested that his patent be issued. In his letter, he explained that "I have allowed it to remain until the present time, it being only lately that any immediate opportunity of rendering it pecuniarily available has occurred." In the resulting litigation, the Supreme Court held that the plaintiff, because of such delay, had forfeited· the right to a patent. In the opinion of the Court, Chief Justice Taft reasoned, in part, as follows:

"It was the legislative intention that the term should run from the date of the issue of the patent, and that, at the end of that time, the public might derive from the full specifications required in the application accompany-

ing the patent, knowledge sufficient to enable it freely to make and use the invention. * * * Any practice by the inventor and applicant for a patent through which he deliberately and without excuse postpones beyond the date of the actual invention, the beginning of the term of his monopoly, and thus puts off the free public enjoyment of the useful invention, is an evasion of the statute and defeats its benevolent aim.

"In this case we have a delay of nine years and a half in securing a patent that might have been had at any time in that period for the asking, and this for the admitted purpose of making the term of the monopoly square with the period when the commercial profit from it would be highest." (263 U.S. at 55–56, 44 S.Ct. at 47).

Except for the difference in the periods of delay, the above quoted language precisely covers the situation here concerned, and the same result must follow.

The principle that governs this case was recognized and applied in Vitamin Technologists v. Wisconsin Alumni Research Foundation, 146 F.2d 941, 952 (9th Cir. 1944). The opinion quoted with approval a conclusion set forth in Wirebounds Patents Co. v. Saranac Automatic Machine Corp., 65 F.2d 904, 905 (6th Cir. 1933) to the effect that "* * * if the inventor, intentionally or by reason of culpable neglect, be guilty of action which unduly postpones the time when the public would be entitled to the free use of the invention, and thus defeats the policy of the patent law, the right to a patent will be lost."

The plaintiff in this case urges that this case should be governed by 35 U.S. C. § 102, which provides that "A person shall be entitled to a patent unless

\* \* \* \* \* \*

"(c) he has abandoned the invention, or

\* \* \* \* \* \*

"(g) before the applicant's invention thereof the invention was made in this country by another who had not aban-

doned, suppressed, or concealed it. * * *"

The plaintiff then argues that subsection "(c)" cannot be used to deprive him of his patent because he never has abandoned it, or that, at least, a factual question is presented as to whether such abandonment occurred.

■ However, section 102(c) is not involved here, because as was said in Woodbridge v. United States, 263 U.S. 50, 56, 44 S.Ct. 45, 47, 68 L.Ed. 159 (1923), "This is not a case of abandonment. It is a case of forfeiting the right to a patent by designed delay." The difference between forfeiture and abandonment was clearly pointed out by Judge Learned Hand in Metallizing Engineering Co. v. Kenyon Bearing etc. Co., 153 F.2d 516, 520 (2d Cir. 1946). He noted that a person may forfeit the right to a patent "* * * by too long concealment, even without exploiting the invention at all.", citing *Woodbridge* and another case. He then stated:

"Such a forfeiture has nothing to do with abandonment, which presupposes a deliberate, though not necessarily an express, surrender of any right to a patent. Although the evidence of both may at times overlap, each comes from a quite different legal source: one, from the fact that by renouncing the right the inventor irrevocably surrenders it; the other, from the fiat of Congress that it is part of the consideration for a patent that the public shall as soon as possible begin to enjoy the disclosure."

The plaintiff next urges that, under section 102(g), an inventor who has not abandoned his invention may delay as long as he likes in seeking to patent it, unless in the meantime a second independent inventor has entered the picture. The plaintiff makes the factual assertion that the defendants do not qualify in this respect because they obtained indirectly from the plaintiff, and without his consent, the knowledge of how to make the infringing coffee percolator.

The plaintiff relies upon Bates v. Coe, 98 U.S. 31, 46, 25 L.Ed. 68 (1878) and upon what may well be the fact that in most, or even all, of the cases holding that the plaintiff's delay had cost him his patent, the rights of other independent inventors had intervened. However, the plaintiff's attempts to find comfort in section 102(g) cannot succeed, for reasons that we now discuss.

In the first place, section 102(g) has no relevance whatever to the present case. That provision is concerned with the question of when a patent may be granted to a *second* inventor. Here, the issue is whether or not the plaintiff, who is acknowledged to be the *first* inventor, is entitled to retain his patent.

The statement in Bates v. Coe, 98 U.S. 31, 45–46, 25 L.Ed. 68, 73 (1878), upon which the plaintiff relies, and which does appear to support his contention, is as follows:

"Inventors may, if they can, keep their invention secret; and if they do for any length of time, they do not forfeit their right to apply for a patent, unless another in the meantime has made the invention, and secured by patent the exclusive right to make, use and vend the patented improvement. Within that rule and subject to that condition, inventors may delay to apply for a patent * * *."

However, in Woodbridge v. United States, 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923), Chief Justice Taft quoted that same statement and then commented that it had "* * * given some concern to judges having to consider actual cases of deliberate delay." (263 U.S. at 61, 44 S.Ct. at 49, 68 L.Ed. at 164.) He thereupon devoted the next two pages of his opinion to quoting from opinions in other cases that presented "* * * explanations and qualifications of Mr. Justice Clifford's general remarks in Bates v. Coe, * * *", and asserted that such remarks "* * * certainly should not be construed to militate against our conclusion in this case and the reasons upon which it is founded."

■ In accordance with the "conclusions" and the "reasons" announced in *Woodbridge,* the plaintiff here loses his patent, not because of any specific provision in 35 U.S.C. § 102, but because he intentionally withheld his invention from the patenting process for five and one-half years after he completed it. The result of this was twofold: In the first place, during that period of time, the public was thereby deprived of any benefit that it might otherwise have derived from being able to use the invention following its having been patented and marketed. And, secondly, the time within which the invention would become part of the public domain, after the expiration of the patent, was similarly delayed. It necessarily follows that the plaintiff by such conduct has defeated the "benevolent aim" of the patent laws, and that his patent must be declared invalid. Woodbridge v. United States, 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923); Woofter v. Carlson, 367 F. 2d 436 (Ct.Pat.App.1967). It seems to me that these conclusions and reasons are in no sense affected by the presence or absence of a second inventor.

■ The foregoing discussion constitutes the basis upon which the plaintiff's patent is declared invalid and summary judgment is granted to the defendants, and it shall constitute the requisite findings of fact and conclusions of law. (See Rule 52(a), Federal Rules of Civil Procedure.)

The affidavits submitted by the defendants tend to show that the so-called infringing device was conceived and developed completely independently of the plaintiff's patent. On the other hand, the plaintiff establishes that he fully disclosed his invention to Mr. Duffy; but his contention that Duffy must have passed it on to defendant Nordskog before the infringing device was constructed, is thus far unsupported by assertion of any facts upon which such a finding could be based. This apparent and significant gap in the plaintiff's proof is made somewhat wider by the categorical denials in the affidavits submitted by

Duffy and Nordskog. In view of what I consider to be the irrelevance of the presence or absence of an independent second inventor, as discussed above, I make no finding concerning this aspect of the case. However, if higher authority shows me to be wrong in this and the matter thus becomes important, it seems to me that counsel are entitled now to the court's tentative views in this respect.