In re YARN PROCESSING PATENT
VALIDITY LITIGATION.
MDL No. 82.

United States District Court,
S. D. Florida.

Aug. 26, 1975.

James Crabtree, Smathers & Thompson, Miami, Fla., and Edward S. Irons, Washington, D. C., also David Rabin, Greensboro, N. C.

## ORDER VACATING SECTIONS I and II OF THE MAY 3, 1974 ORDER

ATKINS, District Judge.

Sections I and II of this Court's order of May 3, 1974 declared invalid the '912 patent because the subject matter of the invention had been sold before the critical date of April 19, 1956. Title 35, United States Code, § 102(b). Additionally, in Section II the Court held that the inventors Seem and Stoddard had abandoned the invention claimed in the '912 patent before the application was filed.

▇ Under Title 35, United States Code, § 102(b), a "sale" one year prior to application for a patent results in an invalid patent. *Egbert v. Lipmann,* 104 U.S. 333, 26 L.Ed. 755 (1881). The existence of a sales contract plus the reduction of the invention to a reality, in the sense it is beyond experimentation, constitutes the placing "on sale" required by the statute. *In re Yarn Processing Patent Validity Litigation,* 498 F.2d 271, 277 (5 Cir. 1974); *Hobbs v. United States Atomic Energy Commission,* 451 F.2d 849 (5 Cir. 1971).

▇▇ This Court decided on May 3, 1974 that the 1954 sales agreement between Permatwist and Leesona Corporation included the invention disclosed in the '912 patent.[1] A sale of the invention does not place the invention "on sale" within the meaning of the statute if the sale is primarily for experimental purposes. *In re Yarn Processing Patent Validity Litigation, supra* at 286. Proof of commercial exploitation shifts the burden to the inventor to prove that the purpose was primarily experimental. *Id.*

Counsel for Lex Tex admitted the invention which was the subject of the '912 patent was reduced to practice prior to 1954. The Court defined reduction to practice as follows:

> If experimentation is continuing in order to show the invention's utility, the invention has not been reduced to practice and a sale under these circumstances would not bring § 102 (b) into play. Conversely if the invention has been reduced to practice, the invention is ready for patenting and a sale more than one year prior to the critical date will prevent the issuance of a patent,[2]

Accordingly, the inevitable conclusion was that the '912 patent was invalid pursuant to Title 35, United States Code, § 102(b).

Shortly after entry of the May 3, 1974 order Lex Tex filed a motion for reconsideration on the ground that its counsel when utilizing the term "reduction to practice" had employed the definition advanced in *Hunt Industries, Inc. v. Fibra Boats, Inc.,* 299 F.Supp. 1145, 1150 (S.D.Fla.1969)[3] which allegedly differs

---

1. *See* Transcript of May 5, 1975 Hearing before this Court at pages 74–76.

2. May 3, 1974 Order on Remaining Summary Judgments, page 4.

3. "To establish a reduction to practice of the inventor's idea, there must be a demonstration that the inventor's idea works; that the invention will perform in a manner which will accomplish its intended purpose. *R.C.A. v. International Standard Electric Corp.,* 232 F.2d 726 (3 Cir. 1956). And there may be an experimental use even following reduction to practice where the experiments are part of an attempt to further refine the device. *Atlas v. Eastern Air Lines, Inc.,* 311 F.2d 156 (1 Cir. 1962)."
   This Court does not believe the above-recited definition of "reduction to practice" varies significantly from its definition. Instead, *Hunt Industries, Inc.* diverges from the Court's May 3, 1974 opinion when treating the consequences of reduction to practice. Nevertheless, for the reasons recited in the instant opinion reliance will not be placed on the mere use of the term "reduction to practice."

from the Court's definition. Lex Tex submitted with its motion for reconsideration a supplemental interrogatory 45(b) which considered two definitions. It states:

> (b) With respect to both patents (3,077,742 and 3,091,912) some time in the period between May of 1952 and February 1954 (date of first reduction to practice of the invention defined by each claim) providing that "reduction to practice" is defined so that it may occur as a result of making and testing laboratory devices alone, but in the event that the meaning of "reduction to practice" is construed so that it can occur only after completion of *all* experiments or tests relating to the practical utility of a device under normal trade operating conditions then with respect to both patents reduction to practice occurred some time in the period between 4/1956 and 8/1957, the reduction to practice of the 734 patent occurring in the latter half of this period. [emphasis and parenthesized language added].

This supplemental interrogatory anticipated the Fifth Circuit's decision in *In re Yarn Processing Patent Validity Litigation, supra*. The Appellate Court for heuristic purposes developed a four phase model of the development of a typical invention. The earliest phase is the mental conceptualization of the idea by the inventor. In the second phase the inventor embodies his idea in a physical model or prototype thus reducing it to reality. Then, the third phase begins in which the inventor experiments with the model to satisfy himself that it needs no further refinement and to prove its fitness for the intended purpose, utility. At the conclusion of phase three, the inventor may seek a legal monopoly by filing his patent application. *Id.* at 274–275.

As presented in *In re Yarn Processing Patent Validity Litigation* there are two lines of authority with differing definition of "reduction to practice":

The first, adopting the legal definition, holds that "reduction to practice" does not occur until the inventor has had a reasonable time after reduction of the invention to reality (i. e., after the end of phase two) to experiment. During this period, an incidental public use or sale will not bar the patent. The second line, equating "reduction to practice" with the initial reduction of the invention to reality, permits a subsequent experimental period of reasonable duration. It would be possible to juxtapose the first line's prohibition of post-reduction-to-practice experimentation with the second's definition of "reduction to practice" and arrive at the rigid rule that there can be no experimental period after the first working model or prototype has been constructed. This, in effect, would read out of the law the reasonable period of phase three experimentation sanctioned under either line of cases. *Id.* at 282.

Lex Tex urges that the May 3, 1974 order superimposes the first line's post-reduction-to-practice experimentation ban on counsel's use of the second definition, thus eliminating the permissible period of experimentation. According to Lex Tex, supplemental interrogatory 45(b) when read in conjunction with the *In re Yarn Processing Patent Validity Litigation* Opinion mandates vacating Sections I and II of the May 3, 1974 order.

Counsel for Celanese and FII suggest that there are not two different definitions of reduction to practice but instead two conflicting philosophies on the consequences of reduction to practice. They also argue the panel decision in *In re Yarn Processing Litigation* conflicts with the opinion in *Hobbs v. United States Atomic Energy Commission.* Since one panel of the Court cannot overrule another, *United States v. Lewis*, 475 F.2d 571 (5 Cir. 1972) counsel urge this Court not to follow *In re Yarn Processing Patent Validity Litigation.*

After conscientious review of *Hobbs* and the cases cited therein as well as

*General Motors Corp. v. Bendix Aviation Corp.,* 123 F.Supp. 506 (N.D.Ind.1954) and the line of case following it, this Court agrees with *In re Yarn Processing Patent Validity Litigation* that two definitions of reduction to practice exist. It would therefore be attaching unwarranted significance to semantics if Sections I and II of the May 3, 1974 order were maintained solely because during argument counsel for Lex Tex admitted the invention was reduced to practice prior to 1954.

Under *Hobbs* reduction to practice is not reached until the physical embodiment of the invention, the model, has been tested sufficiently to demonstrate its utility.[4]  While the *General Motors Corp. v. Bendix Aviation Corp.* line equates existence of the physical model with reduction to practice, then tests for utility follow.  According to *In re Yarn Processing Patent Validity Litigation,* although the definitions differ, the scope of permissible experimentation is the same for both lines of cases, experimentation which is the inventors primary objective[5] may continue if it is reasonably necessary to test the invention's utility or to determine whether further refinement is needed.

This Court ascertains a conflict between the extent of allowable experimentation recognized by *Hobbs* and *In re Yarn Processing Patent Validity Litigation.  In re Yarn Processing Patent Va-*

*lidity Litigation* extends experimentation beyond the *Hobbs* tests which end where the invention has been adequately tested to demonstrate utility and instead continues experimentation until the inventor is satisfied *no* further refinement is needed.[6]  The enlarged scope of experimentation provides two standards: total refinement of the invention before the public's right to vest it defeasibly and to become indefeasible in one year if an application is not timely filed, Title 35, United States Code, § 102, and something less for the invention date. Title 35, United States Code, §§ 101, 112.  The need to choose between the conflicting panel decisions arises only if it is known on what date the invention was sufficiently tested to prove its fitness for the intended purpose, *Hobbs v. United States Atomic Energy Commission, supra,* and if this date differs from the time when the inventor is satisfied that no further refinement is needed. *In re Yarn Processing Patent Validity Litigation, supra.*

■  As earlier stated, the decision that the 1954 agreement between Permatwist and Leesona Corporation was a sale shifted the burden to Lex Tex to prove that the purpose was primarily experimental.  Nevertheless, this Court is mindful of the Fifth Circuit's emphasis that the experimental use issue is a question of fact, depending on the inventor's state of mind.  "When commercial-

---

4. This includes tests not only to put the invention into definitive form, but also to see whether the inventor's ideas are worth exploiting.  *See* the reference to field tests in *Minnesota Mining and Manufacturing Co. v. Kent Industries, Inc.,* 409 F.2d 99 (6 Cir. 1969).

5. This is opposed to a sale primarily for commercial exploitation.

6. Counsel for Celanese and FII defines the conflict between *Hobbs* and *In re Yarn Processing Patent Validity Litigation* as follows:
   The conflict between *Hobbs* and the *Yarn Processing* cases is not just in the further refinement area.  It is in the doctrine of the yarn processing that permits this inventor to enjoy an experimental exception

even though a working model or prototype, a phase 2 device, a 101 utility device has been achieved.  As long as his announced purpose is to *further refine it* or *demonstrate further utility.*  And *Hobbs* flatly refused an experimental exception once the working model was achieved.  Transcript of 5/20/75 Hearing at p. 114. Contrary to counsel's above recited position, the Court believes that tests which adequately demonstrate utility for Hobbs and tests which are "reasonably necessary for demonstrating the devices utility" *In re Yarn Processing Patent Validity Litigation* are completed at the same time.  The only conflict exists in the *In re Yarn Processing Patent Validity Litigation's* extension to "lack of need for further refinement."

ization of the invention is alleged, it requires a weighing of two motives—experimentation and profit—that may co-exist, because the experimental use exception applies if the experimental motive predominates." *Id.* at 288. Lex Tex's supplemental interrogatory 45(b) states that all experiments or tests relating to practical utility of the invention were not completed until 1956 through 1957. Whether experimentation "reasonably necessary" for demonstrating the device's utility *Id.* at 282 or sufficient to demonstrate the invention's utility, *Hobbs v. United States Atomic Energy Commission, supra,* terminate prior to this time can only be determined by a factual evaluation.

Counsel for Universal Textured Yarns argues that the 1954 agreement as well as Mr. Seem's testimony during the litigation between Leesona and Deering Milliken Research Corporation in 1961 conclusively reveal that the invention was beyond the *Hobbs* experimental period in 1954. Particular stress is placed on Mr. Seem's deposition of June 12, 1959, at page 53, starting at line 3:

Q. This process and apparatus for post-treating elasticized or stretch yarn which you testified was in being prior to your agreement with Universal Winding—that is Leesona—was that apparatus and process disclosed in any issued United States letter patent?

A. Not specific.

Q. Would you like to see the patent? (document handed to witness).

A. Apparatus basically the same as covered by U. S. patent 2,864,229 was in existence prior to November 23, 1954. It was not identical but it *performed the same process and produced the same results.*

This testimony leaves open the possibility that during and subsequent to November of 1954, the inventor was engaged in testing his invention to determine if his purpose was accomplished.

Statements in the Permatwist brief filed in the Brooklyn litigation that prior to 1954 a specific method of thermally processing Torque stretch yarn was "reduced to practice" do not aid in the determination of when Hobbs experimentation was conpleted; the term "reduction to practice" is ambiguous. The explanation by counsel of Leesona's switch from the use of "post treating process" terminology to "single heater process" will be valuable during a determination of the facts.

Accordingly, this Court believes it is necessary to vacate its holding of invalidity of the '912 patent pursuant to Title 35, United States Code, § 102(b) in Sections I and II of the May 3, 1974 order.

■ Re-examination of the holding in Section II that the invention claimed in the '912 patent was abandoned must follow. Although the term "abandonment" was used in the May 3, 1974 order the Court intended to utilize "forfeited"; Celanese and FII's motion for summary judgment raised the issue of forfeiture. A person forfeits the right to a patent because of *designed* delay in filing for a patent while abandonment contemplates deliberate, although not necessarily an express, surrender of any right to a patent. *Levinson v. Nordskog Company Inc.,* 301 F.Supp. 589 (C.D.Cal.1969).

■ The purposeful unwarranted delay in seeking a patent necessary for a holding of forfeiture can occur only after the inventor possesses an invention capable of patenting. *Id.* at 590, 2 *Diller's Walker on Patents,* § 150 at 718 (2 ed. 1964). Since this Court has held it remains a question of fact as to when the experimental period was completed for the invention which is the subject of the '912 patent, the time when the inventor should have filed his patent application is unknown. Consequently, the holding of forfeiture in Section II must be vacated as the Court cannot presently determine if there was undue delay in filing the patent application.

It is for the aforesaid reasons

Ordered and adjudged that Sections I and II of the May 3, 1974 order are vacated and the motions for summary judgment treated therein are denied on all grounds. It is futher

Ordered and adjudged that this Court denies certification under Title 28, United States Code, § 1292 as it does not believe an appeal from this order will materially advance the ultimate termination of the litigation. This Court is, however, aware of the dichotomy, as delineated on pages 5 and 6 of this order between the holding in *Hobbs* and *In re Yarn Processing Patent Validity Litigation* by which it appears that one panel of the Fifth Circuit Court of Appeals has overruled a previous panel's decision, creating conflict in an important area of the law.